UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
DOREEN CERRA,                       )
        Plaintiff,                  )
                                    )
v.                                  )   Civil Action No. 04-12095 RGS
                                    )
AMERICAN AIRLINES, INC.             )
                                    )
Defendant.                          )
_____)

**DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Doreen Cerra ("Cerra") is a former passenger service agent at American Airlines, Inc. ("AA") whose employment with AA ended when she did not return to work from an injury on duty leave of absence within the period specified by AA's company policy. (*See Defendant's Statement of Material Facts Not In Dispute* (hereinafter "SOF") ¶1).  Cerra suffered a back injury in July of 1996. *Id.*  Thereafter, she took a leave of absence from her position with AA from July 1996 until September 1996. (*See SOF* ¶ 2). Cerra began a second leave of absence in July, 1997. (*See SOF* ¶ 3).  Pursuant to AA's policies in effect at all relevant times, AA employees on leave of absence for medical reasons could take up to five years for rehabilitation and recovery.  At the end of that period, if the employee still had not received medical clearance to return to work with or without a reasonable accommodation, the employee was to be administratively terminated.  (*See SOF* ¶ 4).

During the course of her second leave of absence, Cerra began seeing a psychiatrist, Dr. Sahadeo, and was prescribed medication by Dr. Sahadeo for depression.

In or about February 2001, Cerra received clearance from her orthopedist to return to work with no restrictions. (*See SOF* ¶ 6). At all relevant times, AA's medical department ("AA medical") was responsible for reviewing clearances, restrictions, and other medical records received from employees' treating physicians, and for clearing employees on leave of absence for return to work. (*See SOF* ¶ 7). After AA medical received Cerra's return to work authorization from her orthopedist, AA medical notified Cerra that she would need clearance to return to work from her treating psychiatrist as well. (*See SOF* ¶ 8). Approximately six months later, Cerra's psychiatrist provided a letter stating that Cerra was cleared to return to work without restrictions, but also disclosing certain prescription medications that Cerra was then taking. (*See SOF* ¶ 9).

On or about September 5, 2001, Cerra contacted Andrea Valle, an AA Customer Service Manager, to determine her return to work status. (*See SOF* ¶ 10). At that time, Ms. Valle informed Cerra it was her understanding that Cerra had not been cleared to return to work by AA's medical department because of certain medications (unknown to Valle) that Cerra was taking. (*See SOF* ¶ 11). Cerra had no further contact with Ms. Valle, Ms. Douglas, or AA medical after that time. (*See SOF* ¶ 12).

Cerra testified she knew that her employment would end after her leave of absence reached five years. (*See SOF* ¶ 13). Cerra also knew that there was an appeals process in place by which she could challenge AA medical's decision not to clear her for return to work due to her medications. (*See SOF* ¶ 14). Despite this knowledge, Cerra elected not to pursue the appeals process of which she was aware. Cerra testified that she decided not to pursue an appeal because she did not receive a communication in writing from AA medical. (*See SOF* ¶ 15). Apart from her decision not to appeal, Cerra also did

not request that AA make any accommodations that would allow her to return to work. (*See SOF* ¶ 16). Since her termination, Cerra has not applied for new employment with AA. (*See SOF* ¶ 17).

Cerra claims that AA discriminated against her based on disability and age. (*See SOF* ¶ 18). In support of her claims, she alleges that her former supervisor, Kip Hamilton, made certain age-related statements while Cerra was actively employed that could be construed as evidence of age bias. (*See SOF* ¶ 19).[1] Specifically, Cerra claims that Hamilton, who was of approximately the same age as Cerra, told Cerra "we're not as young as we used to be." (*See SOF* ¶ 20).

In her Complaint, Cerra alleges that AA refused to reinstate her and failed to respond to her requests to return to work. Cerra further alleges that AA's conduct had no relationship to any legitimate business reason, but instead was designed to discriminate against her based on her disability, her age, or both. (*See SOF* ¶ 21). In ostensible support, Cerra alleges that several individuals hired by AA for positions other than her passenger service agent were paid less than she had been paid, received fewer benefits than she had received, and were younger than she. (*See SOF* ¶ 22). When pressed for details, Cerra admitted she had no knowledge as to whether AA hired *any* passenger service agents, regardless of age, since her leave of absence ended. (*See SOF* ¶ 22). In addition, Cerra has no evidence that she was replaced. (*See SOF* ¶ 24).

Cerra contends without evidentiary support that she was discriminated against on the basis of her disability because "[American] didn't have much use for me as a ticket agent" after her injury. (*See SOF* ¶ 25). Cerra further contends that she was

---

[1] It is undisputed that Ms. Hamilton was not involved in any personnel decision relating to Cerra after Cerra began her second leave of absence in July, 1997.

discriminated against on the basis of disability because AA did not unilaterally assign her to a job other than that of passenger service agent, in spite of the fact that she never requested a different job assignment, nor any other accommodation. (*See SOF* ¶ 26). Cerra's allegations fail to sustain a claim, either legally or factually, for discrimination on the basis of disability or age. (*See SOF* ¶ 27).

**I.    CERRA'S SEPARATION FROM EMPLOYMENT RESULTED FROM AA'S FACIALLY NEUTRAL, NONDISCRIMINATORY LEAVE POLICY, AND NOT FROM ANY DISCRIMINATORY ANIMUS.**

At deposition, Cerra testified that she was aware that AA's leave of absence policy afforded employees up to five years of leave for medical reasons. (*See SOF* ¶ 13). Cerra further testified she knew that, pursuant to its leave policy, AA ended the employment of employees who did not return from leave after five years. *Id.* The undisputed evidence establishes that Cerra did not return to work within five years. It further shows that AA complied with its own facially neutral policy when it separated her from employment with the company after five years of medical leave. Cerra therefore cannot demonstrate any discriminatory animus motivating her termination from employment.[2]

Moreover, the evidence shows that Cerra failed to exhaust her right to an internal appeal of AA medical's decision that she was unable to return to work while on the medications prescribed by her psychiatrist, and that Cerra never requested any

---

[2] For purposes of summary judgment only, AA characterizes her separation from employment as a termination. However, AA reserves its right to argue at trial that her separation from employment constituted neither a termination nor a constructive discharge. Under Commonwealth law, a claim for discriminatory separation from employment can be based on no adverse employment action short of involuntary termination or constructive discharge. *See generally Wheelock College v. Massachusetts Commission Against Discrimination*, 371 Mass. 130 (1976). *See also GTE Products Corp. v. Stewart*, 421 Mass. 22, 25 (1995).

accommodation for her alleged disability. These failures preclude Cerra from claiming that her separation from employment arose from any discriminatory animus.

    A.    CERRA'S OWN INACTION PRECLUDES ANY NEXUS BETWEEN CERRA'S SEPARATION FROM EMPLOYMENT AND AA'S PURPORTED DISCRIMINATORY ANIMUS.

The record establishes that Cerra's own inaction and omissions after she learned that her medication regimen prevented her return to work drove her separation. Indeed, Cerra failed to take any of a number of steps that might have brought about her return to work.

First, Cerra's deposition testimony shows that she did not exhaust AA's established internal procedures for appealing decisions made by AA medical. (*See SOF* ¶ 15). Cerra testified that she was aware of this process, and that she knew it was available to her, but that she never pursued the process because she did not receive a notice in writing from AA medical. (*See SOF* ¶¶ 14, 15). She further testified that she had no additional conversations with Sharon Douglas, Andrea Valle, or anyone at AA medical after learning that she had not been cleared to return to work. (*See SOF* ¶ 12). In short, Cerra's deposition testimony shows that she knew exactly what processes she needed to follow to challenge AA medical's decision, but that she chose not to avail herself of them. Her inaction therefore precludes her from arguing that her separation from employment was motivated by discrimination and not by AA's compliance with a policy known to her.[3] *See, e.g., Galdauckas v. Interstate Hotels Corp. No. 16*, 901 F.Supp. 454, 464 (D.Mass. 1995) (summary judgment appropriate where plaintiff failed to show that employer applied its policies and procedures in a discriminatory fashion).

---

[3] Besides her aforementioned decision not to appeal AA medical's determination, Cerra never took the initiative to seek out for herself another position within American that was consistent with her medication schedule. *Cerra Deposition,* pp. 163, 213-214; *Answers to Interrogatories*, Answer Number 5.

> B.   CERRA'S DISABILITY CLAIM ALSO FAILS BECAUSE SHE NEVER SOUGHT A REASONABLE ACCOMMODATION.

Cerra bears the burden of proving that she was qualified to perform the essential functions of her position with or without reasonable accommodation. *Ward v. Westvaco Corp.*, 859 F.Supp. 608, 614 (D.Mass. 1994). AA medical deemed she could not perform the essential functions of the job because of her medications.[4] (*See SOF* ¶ 11). At that time, it became Cerra's responsibility to propose or request an accommodation that would still permit her to perform the essential functions of the position of passenger services agent. *Ocean Spray Cranberries, Inc. v. Massachusetts Commission Against Discrimination*, 441 Mass. 632, 649 at FN 20 (2004). *See also Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260 (1st Cir.2001) (essential element for success on reasonable accommodation claim is that employee has made sufficient request; employee has not made sufficient request for accommodation unless employee makes specific and direct request giving notice that she requires accommodation). Cerra never did so. (*See SOF* ¶ 16). Cerra testified that the only request she made of AA or any of its employees from September of 2001 forward was to ask Andrea Valle to find out why her medications

---

[4] AA expects Cerra will contend that she was qualified to perform the essential functions of her position without accommodation. However, Cerra has no admissible evidence to substantiate that assertion. Cerra's mere allegation that she is qualified to perform the essential functions of her job does not suffice to create a genuine issue of material fact pursuant to Fed. R. Civ. P. 56(c). *See, e.g., Soto-Ocasio v. Federal Express Corp.*, 150 F.3d 14, (1st Cir. 1998) (plaintiff bears burden of proving that she could perform essential functions of job, and must present specific evidence in addition to pro forma medical releases from her physicians). *See also Mason v. Avaya Communications*, 357 F.3d 1114, 1120 (10th Cir. 2004) (employee's testimony not sufficient to create genuine issue of material fact as to what were essential functions of job); *Feliciano v. State of R.I.*, 160 F.3d 780, 786 (1st Cir. 1998); *Mulloy v. Acushnet Co.*, 2005 WL 1528208 (D.Mass. 2005). Moreover, though Cerra may contend that various of the tasks listed in the job description are not ones that she would be required to perform if assigned to certain job locations, in multi-task jobs like that of passenger services agent, critical tasks remain essential functions of the job regardless of an employee's specific assignment at a particular point in time. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 25-26 (1st Cir. 2001), citing *Miller v. Illinois Department of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997) (essential functions of prison guard position encompassed all tasks required of prison guards despite the fact that guards rotating among certain assignments need not perform all of them regularly).

were of concern.  (*See SOF* ¶ 16).  That query does not constitute a request for accommodation under General Laws Chapter 151B.  *Ocean Spray*, 441 Mass. at 649.

Even where an employer knows that an employee has a disability, the employee retains the responsibility of initiating the accommodations dialogue by articulating her need for accommodation.  *Id*.  As an illustration, in *Ocean Spray Cranberries, Inc. v. Massachusetts Commission Against Discrimination*, an employee had sent three letters to his employer, each describing problems with an employee's work conditions and possible remedies for those problems.  *Id*.  The Supreme Judicial Court found that the letters, taken separately, likely would not constitute an adequate request for accommodation, even though each described the employee's medical condition and asked for assistance in modifying his workplace to reduce risks to his future health.  *Id*.  However, the content of the three letters, taken in conjunction with one another, did form the basis for a request for reasonable accommodation.  *Id*.

In stark contrast, Cerra made not a single request that would put AA on notice that she sought reasonable accommodation.  At deposition, she testified that she never asked her supervisor, her supervisor's boss, or the human resources person with whom she spoke for any accommodations.  (*See SOF* ¶ 16).  In consequence, she cannot claim that AA refused to accommodate her.  *Ocean Spray*, 441 Mass. at. 649.

**II.    CERRA HAS NO EVIDENCE TO SUPPORT HER CLAIM OF AGE DISCRIMINATION.**

In order to prove her claim of age discrimination, Cerra needs to set forth admissible evidence that (1) she was over 40 years old when her employment with AA ended; (2) she was terminated; (3) she had been performing her job at an acceptable level; and (4) AA replaced Cerra with a younger person with similar qualifications.  *See,*

*e.g., White v. University of Massachusetts at Boston*, 410 Mass. 553, 557 (1991).  There is no dispute that Cerra was over 40 years old when her leave of absence ran out.  (*See SOF* ¶ 27).  For the purposes of summary judgment only, AA assumes *arguendo* that Cerra's job performance prior to her leave of absence had been acceptable.  Nevertheless, Cerra's claim of age discrimination must fail because she has no evidence of age-based discriminatory animus, nor has she advanced evidence suggesting that a younger person with similar or lesser qualifications replaced her.

      A.    CERRA ADMITS SHE HAS NO EVIDENCDE THAT A YOUNGER PERSON WITH SIMILAR QUALIFICATIONS REPLACED HER.

Cerra's own deposition testimony undermines her claim of age discrimination.  At deposition, she testified that she has no idea whether anyone has been hired as a passenger services agent in Boston subsequent to her leave of absence, much less whether any such putative new-hires are older or younger than she.  (*See SOF* ¶ 22).  Rather, Cerra testified that the basis of her age claim is that younger persons were hired into **different** positions from the one that she held at AA, and that these younger people were earning less money and fewer benefits than she had earned.  In response to an interrogatory seeking the basis for her age claim, Cerra stated that:

> "[t]hroughout the process of me trying to get clearance from AA's Medical Department there were several people that were hired in positions other than the position that I had.  These people were paid substantially lower wages, younger, less benefits than I had, so the fact is I feel as though discrimination was present as I was diligently trying to get my job back."  *Id.*

In order to prove her claim of age discrimination, Cerra must identify similarly situated comparators who received better treatment than she.  The quintessential showing would be that someone younger than Cerra replaced her as a passenger services agent.  *White*, 410 Mass. at 557.  Alternatively, Cerra could attempt to show age bias by proving that

one or more of her job-category peers at AA, comparable to Cerra in all respects except age, received better treatment than she. *See, e.g., Lawrence v. Northrop Corp.*, 980 F.2d 66, 73-74 (1st Cir. 1992) (addressing treatment of peers in context of reduction in force); *Banerjee v. Board of Trustees of Smith College,* 495 F.Supp. 1148, 1161 (D.Mass. 1980) (evidence failed to support claim of discrimination on basis of race and national origin where there was no evidence that plaintiff was treated any differently from his peer group). Because Cerra's deposition testimony and answers to interrogatories identify no such individuals, Cerra's age discrimination claim lacks any factual or evidentiary basis.[5]

### B, CERRA HAS NO EVIDENCE OF AGE-BASED DISCRIMINATORY ANIMUS.

In addition to her utter failure to show that a younger person received more favorable treatment, Cerra fails to prove that anyone at AA acted with intent to discriminate against her based upon her age. She sets forth no evidence of age bias on the part of Andrea Valle, Sharon Douglas, or anyone at AA medical. In fact, the only alleged evidence of bias based on age that Cerra has advanced is a stray remark made five years earlier by Kip Hamilton, a woman of similar age to Cerra, who by Cerra's admission had no role in evaluating Cerra's return-to-work status. Indeed, Cerra acknowledges that Ms. Hamilton not affiliated with AA's Boston operation in 2000 and 2001 when Cerra was seeking clearance to return to work. (*See SOF* ¶¶19, 20). At best, such comments are stray remarks made by a woman of comparable age, who lacked any standing or power to influence Cerra's employment. As a matter of law such comments do not constitute evidence of age discrimination. *Wynn & Wynn, P.C. v. Massachusetts*

---

[5] Her assertion thereof in fact rises to the level of a violation of F.R.C.P. 11, which requires evidentiary support, or likelihood thereof after a reasonable opportunity for discovery, for any allegations and factual contentions.

*Commission Against Discrimination*, 431 Mass. 655, 667 (Mass. 2000) (stray remarks, remarks made by persons outside of the decision making process, or remarks made by decision makers outside of the decision process are not adequate evidence to sustain plaintiff's burden of proof). *See also Tuttle v. Brandeis University*, 60 Mass.App.Ct. 1119 at *3, (2004).

Moreover, Ms. Hamilton's remarks are too oblique and ambiguous to constitute evidence of age bias. *See Sullivan v. Liberty Mutual Insurance Company*, 444 Mass. 34, 49 n. 24 (2005)(comments that employee was part of "old guard" and was not adapting to the new ways of doing business at Liberty Mutual" too vague and ambiguous to serve as the basis for a claim of age discrimination)*; Fontaine v. Ebtec Corp.*, 415 Mass. 309, 314 n. 7 (1993)*; Kopylenko v. Innovative Membrane Services, Inc.*, 60 Mass. App. Ct. 1110, (2004) (statements that employee should consider retiring, that it was too late for him to learn new job skills, and that supervisor wanted young blood in department held to be ambiguous remarks inadequate to prove discrimination); *Johansen v. NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 301-302 (1991). Massachusetts' appellate courts have stated repeatedly that an isolated ambiguous remarks regarding age are not sufficient evidence f impermissible bias. *Sullivan*, 444 Mass. at n. *24; Fontaine,* 415 Mass. at n.7*; Kopylenko,* 60 Mass. App. Ct. 1110; *Johansen*, 30 Mass. App. Ct. at 301-302. Therefore, statements like Ms. Hamilton's, without more, do not evidence bias. *Sullivan*, 444 Mass. at n. *24; Fontaine,* 415 Mass. at n.7*; Kopylenko,* 60 Mass. App. Ct. 1110; *Johansen*, 30 Mass. App. Ct. at 301-302.

## CONCLUSION

For the reasons set forth herein, American Airlines, Inc. requests that this Court enter judgment in its favor on all counts of the plaintiff's Complaint, and that it award American Airlines, Inc. its attorneys' fees and costs incurred in defense of this action.

**AMERICAN AIRLINES, INC.**
By Its attorneys,


 /s/ Amy Cashore Mariani
Amy Cashore Mariani, Esq., BBO#630160
Michael A. Fitzhugh, Esq., BBO#169700
FITZHUGH, PARKER & ALVARO LLP
155 Federal Street, Boston, MA 02110
(617) 695-2330

Dated:  February 3, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 3, 2006.

*/s/ Amy Cashore Mariani*
Amy Cashore Mariani