UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                              )
DOREEN CERRA,                 )
      Plaintiff,              )
                              )
v.                            )     Civil Action No. 04-12095 RGS
                              )
AMERICAN AIRLINES, INC.,      )
                              )
Defendant.                    )
_____)
```

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant American Airlines, Inc. (hereinafter, "AA") submits its statement of material facts not in dispute for purposes of its summary judgment motion.

## Statement of Facts

1. On or about July 18, 1996, Plaintiff Doreen Cerra (hereinafter "Cerra"), while working as a passenger service agent at AA, injured her lower back while lifting luggage and was out of work for several weeks. (*See Complaint* ¶ 9, attached as Exhibit 1; *Deposition of Doreen Cerra, Day 1 on July 19, 2005 and Day 2 on September 20, 2005* (hereinafter "*Cerra Deposition*"), p. 20, attached as Exhibit 2).

2. As a result of her back injury, Cerra took a leave of absence from July 1996 until September 1996 for a period of approximately three weeks. (*See Complaint* ¶ 9, 10, attached as Exhibit 1; *Cerra Deposition,* p. 21, attached as Exhibit 2).

3. Cerra took a second leave of absence in July 1997 because of her back injury. (*See Complaint* ¶ 12, attached as Exhibit 1).

4. Pursuant to AA's policies in effect at all relevant times, AA employees on leave of absence for medical reasons could take up to five years for rehabilitation and recovery. At the end of that period, if the employee still had not received medical clearance to return to work with or without a reasonable accommodation, the employee was to be administratively terminated. (*See American Airlines Employee Handbook*, Section 5-11, attached as Exhibit 3.)

5. During the course of her second leave of absence, Cerra began seeing a psychiatrist, Dr. Sahedeo, and was prescribed medication by Dr. Sahedeo for depression.

6. In or about February 2001, Cerra received clearance from her orthopedist to return to work with no restrictions. (*See Letter from Dr. Farber*, attached as Exhibit 4).

7. At all relevant times, AA's medical department ("AA medical") was responsible for reviewing clearances, restrictions, and other medical records received from employees' treating physicians, and for clearing employees on leave of absence for return to work. (*See American Airlines Employee Handbook*, Section 5-11, attached as Exhibit 3).

8. After AA medical received Cerra's return to work authorization from her orthopedist, AA medical notified Cerra that she would need clearance to return to work from her treating psychiatrist as well. (*See Cerra Deposition*, p. 181-182, attached as Exhibit 2).

9.  Approximately six months later, Cerra's psychiatrist provided a letter stating that Cerra was cleared to return to work without restrictions, but also disclosing certain prescription medications that Cerra was then taking. (*See Letter from Dr. Sahedeo*, attached as Exhibit 5).

10. On or about September 5, 2001, Cerra contacted Andrea Valle, an AA Customer Service Manager, to determine her return to work status. (*See Cerra Depositon*, pp. 182-183, attached as Exhibit 2).

11. At that time, Ms. Valle informed Cerra it was her understanding that Cerra had not been cleared to return to work by AA's medical department because of certain medications (unknown to Valle) that Cerra was taking. (*See Cerra Deposition*, p. 183, attached as Exhibit 2; Deposition Exhibit 3, attached as Exhibit 6).

12. Cerra had no further contact with Ms. Valle, Ms. Douglas or AA medical after that time. (*See Cerra Deposition*, pp. 139-140, attached as Exhibit 2).

13. Cerra testified she knew that her employment would end after her leave of absence reached five years. (*See Cerra Deposition*, p. 158-159, attached as Exhibit 2).

14. Cerra also knew that there was an appeals process in place under which she could challenge AA medical's decision not to clear her for return to work due to her medications. (*See Cerra Deposition*, p. 162, attached as Exhibit 2).

15. Despite this knowledge, Cerra elected not to pursue the appeals process of which she was aware. Cerra testified that she decided not to pursue an appeal

because she did not receive a communication in writing from the medical department. (*See Cerra Deposition*, p. 213-214, attached as Exhibit 2).

16. Apart from her decision not to appeal, Cerra also did not request that AA make any accommodations that would allow her to return to work. Cerra testified that the only request she made of AA or any of its employees from September of 2001 forward was to ask Andee Valle to find out why her medications were of concern. (*See Cerra Deposition*, p. 163-165, attached as Exhibit 2).

17. Since her termination, Cerra has not applied for new employment with AA. (*See Answers to Interrogatories of Doreen Cerra ("Answers to Interrogatories")*, Answer Number 5, attached as Exhibit 7).

18. Cerra claims that AA discriminated against her based on disability and age. (*See Complaint,* Counts I and II, attached as Exhibit 1).

19. In support of her claims, she alleges that her former supervisor, Kip Hamilton, made certain age-related statements while Cerra was actively employed that could be construed as evidence of age bias. (*See Cerra Deposition*, pp. 171-172, 209, attached as Exhibit 2).

20. Specifically, Cerra claims that Hamilton, who was of approximately the same age as Cerra, told Cerra "we're not as young as we used to be." *Cerra Deposition*, pp. 172, 189, attached as Exhibit 2).

21. In her Complaint, Cerra alleges that AA refused to reinstate her and failed to respond to her requests to return to work. Cerra further alleges that AA's conduct had no relationship to any legitimate business reason, but instead was

4

designed to discriminate against her based on her disability, or her age, or both. (*See Complaint* ¶¶ 21, 23, 26, attached as Exhibit 1).

22. In ostensible support, Cerra alleges that several individuals hired by AA or positions other than her passenger service agent were paid less than she had been paid, received fewer benefits than she had received, and were younger than she. (*See Cerra Deposition*, p. 239-242, attached as Exhibit 2; *Answers to Interrogatories*, Answer 23, attached as Exhibit 7).

23. When pressed for details, Cerra admitted she had no knowledge as to whether AA hired *any* passenger services agents, regardless of age, since her leave of absence ended. (*See Cerra Deposition*, p. 242-243, attached as Exhibit 1).

24. In addition, Cerra has shown no evidence that she was replaced. (*See Cerra Deposition*, p. 244, attached as Exhibit 2).

25. Cerra contends without evidentiary support that she was discriminated against on the basis of her disability because "[American] didn't have much use for me as a ticket agent" after her injury. (*See Cerra Deposition*, p. 243-244, attached as Exhibit 2).

26. Cerra further contends that she was discriminated against on the basis of disability because AA did not unilaterally assign her to a job other than that of passenger service agent, in spite of the fact that she never requested a different job assignment, nor any other accommodation. (*See Cerra Deposition*, p. 245-249, attached as Exhibit 2).

27. There is no dispute that Cerra was over 40 years old when her leave of absence ran out. (*See Complaint* ¶ 4, attached as Exhibit 1).

28. Cerra's allegations fail to sustain a claim, either legally or factually, for discrimination on the basis of disability or age.

Respectfully submitted,
**AMERICAN AIRLINES, INC.,**

By its attorneys,

 */s/ Amy Cashore Mariani*
Amy Cashore Mariani, BBO #630160
Michael A. Fitzhugh, Esq., BBO#169700
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street Suite 1700
Boston, MA 02110
(617) 695-2330

Dated: February 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 3, 2006.

*/s/ Amy Cashore Mariani*
Amy Cashore Mariani