**EXHIBIT 7**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS


DOREEN CERRA,

 Plaintiff,                    Civil Action No. 04-12095 RGS

v.

AMERICAN AIRLINES, INC.

 Defendant

### PLAINTIFF'S ANSWERS TO DEFENDANT'SFIRST SET OF INTERROGATORIES

Pursuant to Fed.R.Civ.P. 33, the defendant, American Airlines, Inc., ("American"), propounds the following interrogatories to the plaintiff, Doreen Cerra, to be answered under oath and in writing, with answers to be provided to Amy Cashore Mariani, Esq., Fitzhugh, Parker & Alvaro LLP, 155 Federal Street, Suite 1700, Boston, MA 02110, within thirty (30) days of receipt thereof.

I.    GENERAL OBJECTIONS

1 .    For the purpose of responding to these discovery requests, the term "Plaintiff" refers to Doreen Cerra.

2.    Plaintiff objects to the propounded *Interrogatories to the extent it seeks information relating to matters that are not raised in Plaintiff's Complaint and Demand for Jury Trial ("Complaint") filed in Suffolk Superior Court for the Commonwealth of Massachusetts, for the reason that such information is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

3.    Plaintiff objects to the Request for Production to the extent it seeks information beyond the scope of discovery permitted under Federal Rules of Civil Procedure 26 and 34 or to the extent the Defendants request that Plaintiff respond in a fashion not required by such rules. Plaintiff does not warrant or guarantee that her understanding or use of terms in these Responses accords with Defendant's understanding or use of the same terms in Defendants First Request for the Production of Documents.

4.    Plaintiff objects to the Request for Production to the extent it seeks information protected from discovery by privilege

4.     Plaintiff objects to the Request for Production to the extent it seeks information protected from discovery by privilege or immunity, including the attorney-client privilege, the work product immunity doctrine, and party and witness communication privileges.

5.     Plaintiff objects to the Request for Production to the extent it seeks information prepared in anticipation of, or in the course of, litigation or for trial without a showing of substantial need and an inability, without undue hardship, to obtain the substantial equivalent by other means.

6.     Plaintiff objects to the Request for Production to the extent it exceeds, enlarges, or modifies the requirements of the Federal Rules of Civil Procedure.

7.     Plaintiff objects to the Request for Production to the extent it seeks information, which is protected from disclosure under state or other applicable law.

8.     Plaintiff objects to the Request for Production to the extent it calls for information prepared or compiled by an expert retained for the sole purpose of consultation and not for the purpose of testifying as a witness or aiding another expert witness expected to testify during the trial of this cause.

9.     Plaintiff objects to the Request for Production to the extent it seeks information unreasonably cumulative or duplicative, or that is now in the possession or control of the Defendants or obtainable from another source that is more convenient, less burdensome, or less expensive.

10.    Plaintiff objects to the Request for Production to the extent it (1) does not accurately describe the information sought and (2) is so vague that Plaintiff is, in good faith, unable to ascertain what information is requested.

12.    These Responses are subject to and without waiver of

      (a.)  any objections as to the admissibility into evidence of the response made;

      (b.)  the right to object to other discovery directed to the subject matter of the response;

      (c.)  the right to make additional or supplemental objections or responses in accordance with the Federal Rules of Civil Procedure;

      (d.)  the right to revise, correct, add to or clarify at any time.

**PLAINTIFFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

1. State your full name, address, telephone number and date of birth. If you plan to change your address within the next three (3) months, state your new address and telephone number.

    ANSWER:
    Doreen Elizabeth Cerra
    3658 Sea Gull Bluff Drive
    Virginia Beach, VA  23455
    757-321-7155
    8-10-56

2. State whether you have been gainfully employed, including self-employment, at any time during the period beginning on July 25, 2001 and ending on the date on which the answers to these Interrogatories are executed and verified.

    ANSWER:

    Yes

3. If the answer to Interrogatory No.2 is in the affirmative, state as to each and every such employment:

    a. The location(s) of your place of employment by street address, city and state, if different from the address set forth in this Interrogatory;

    b. The date of commencement and the date of termination of your employment;

   c. The total compensation earned by you (whether hourly wages, weekly salary, income or profit) for each period during which you were so employed;

   d. The number of hours worked per week;

   e. Your job title and a brief description of your duties for each and every job held by you with said employer;

   f. If you resigned or were terminated from any such employment, set forth in detail the reason(s) for your resignation or termination.


   ANSWER:

   The Dollar Tree
   Jog Road
   Lake Worth, FL
   2-03 Thru 8-03
   $6.25 hr.
   25-30 hrs. per wk.
   Cashier
   Quit
   Not enough money to cover child care


   West Palm Airport Parking

   West Palm Beach, FL
   Approx. 11-02-11-02 2 days
   $6.50 per hour
   2 Days - 16 Hours
   Cashier
   Quit
   Assigned graveyard shift in remote parking


   Moving In Style

   Port. St. Lucie, FL
   $10.00 per hour
   Periodically - no set schedule 7-04 - 12-04
   50 hours in several mos.
   Packer
   Out of business

CMC Technical

Lynhaven Parkway
Virginia Beach, VA
7-05 to present
$18,000.00 yr
40 hrs. per week
Recruiter

4. State whether you applied for any employment during the period beginning on July 25, 2001 and ending with the date upon which the answers to these Interrogatories are executed and verified.

ANSWER:

Yes

5. If the answer to Interrogatory No.4 is in the affirmative, as to each and every application or inquiry for employment, excluding any employment described in the answer to Interrogatory No.3 above, state the following:

    a. The name and address of the employer to which you applied or inquired;

    b. The location(s) of the employer to which you applied or inquired, including street address, city and state, if different from the address previously set forth in the answer to subparagraph (a);

    c. The date upon which such application(s) or inquiries for employment were submitted or made and whether or not the employer made you an offer of employment.

ANSWER:

South West Airlines - W. Palm Beach Airport
ITS Security - W. Palm Beach, FL

```
Royal Palm Beach Cleaning Service - Royal Palm Beach, FL
Marriott Hotel - Delray Beach, FL
Banana Boat Restaurant - Delray Beach, FL
Bostons - Delray Beach, FL
Amoco Gas Station - Lantana, FL
Hilton Hotel - W. Palm Beach, FL
The Ritz Carlton Hotel - Manelepan, FL
Cleaning Service of Boca - Boca Raton, FL
Lowes - Boynton Beach, FL
Bagel and More - Lantana, FL
Publix - Lantana, FL
CMC Technical - Virginia Beach, VA
2 Offers - Dollar Tree, Amoco Station - Chose Dollar Tree
```

**6.** Please identify and describe each and every communication you had with any member of management and/or human resources at American Airlines, Inc. regarding your claim for worker's compensation benefits, including, but not limited to, correspondence, meetings, discussions, telephone conversations, telephone messages, and e-mail communications.

ANSWER:

On or about May of '97, I first applied to my supervisor, Chris Konevich. It is my understanding that she filled out paper work incorrectly, which delayed any benefits that I might have been eligible for benefits until 8/97.

I had phone conversations with Mr. Konevich approximately 4 to 5 times. There were no meetings, e-mails or other correspondence.

**7.** Please identify and describe each and every communication you had with any member of management and/or human resources at American Airlines, Inc. regarding your injury on duty leave of absence, including, but not limited to, correspondence, meetings, discussions, telephone conversations, telephone messages, and e-mail communications.

ANSWER:

Sharon Douglas, HR – I told her that my doctor cleared me to go back to work. In addition, I asked her what was the process by which I could return to work.

8. Please identify and describe each and every communication you had with any member of management, human resources, or medical at American Airlines, Inc. regarding reinstatement or rehiring subsequent to your injury on duty leave of absence, including, but not limited to, correspondence, meetings, discussions, telephone conversations, telephone messages, and e-mail communications.

ANSWER:

Andrea Vallee, same as #7 with Sharon Douglas (HR), told her I was cleared and I wanted to be reinstated.

Elizabeth Rodriguez HR NYC, I had asked her if she could help me with reinstatement.

Andrea Vallee, Management - telephone conversations, approximately 09/04/01. I had explained in detail how I was experiencing great difficulty with Betty, head or lead nurse NYC Medical, how for several months I tried getting clearance with no success. Sharon Douglas was basically of no help. Could you please help me? She told me to call NYC Medical again and ask Betty why I had not been cleared. I explained for several months the inaccuracy of her information to me and I would prefer if she would call. She agreed, put me on hold, got back on line and told me it was my medication. I asked her what am I supposed to do, I need my medication. She said maybe you should ask your doctor to take you off it. Also told me that we have several months to work on this. I believe she said Ms. Douglas was on vacation and she would call someone else in HR and find out what needs to be done to get my job back. She would call me in a couple of days because her husband or boyfriend was having open heart surgery. I never heard from her again until May 06-07, 2002 with written letters saying I was terminated. My 5 years were up.

There were a couple of other phone calls, approximately 2-3, that I can't remember the dates, conversation was about how other employees had disabilities and they were still employed with the company. I was asked if I knew any such employee and I said yes, Chris Pepe-- Several, with Sharon Douglas, stating I want to work

I also had several conversation with a Betty in the NY medical department and in each of those conversations I asked when I would be able to return to work.

9. Please identify each and every person whom you believe has knowledge or information concerning the circumstances of your leaves of absence and requests for accommodation, if any, from American Airlines, Inc., including in your answer as to each such person, an identification of the knowledge or information you believe he or she has and the basis for your belief that he or she has such knowledge or information.

ANSWER:

Nurse Betty, direct involvement in reviewing LOA and accom.
Sharon Douglas – contacted and gave DFW med. number
Chris Konevich gave Sharon Douglas my number.
Andrea Vallee told me my meds preventing return.
Dr. Yanow – didn't want back info., just psychological.
The Review Board DFW Med. – supposed to be sent from NYC.
Nurse Susan NYC
Joan Stack – friend

10. Please identify each and every person whom you believe has knowledge or information concerning the circumstances of your separation from employment from American Airlines, Inc., including in your answer as to each such person an identification of the knowledge or information you believe he or she has and the basis for your belief that he or she has such knowledge or information.

ANSWER:

Andrea Vallee – She sent me 2 letters stating my employment with AA was terminated.

11. Was your employment at the time you began your injury on duty leave of absence governed by any written contract or agreement?

    ANSWEER:

    Not that I am aware of.

12. If the answer to the preceding interrogatory is in the affirmative, please provide the following information about each such contract or agreement:
   a. The date on which it was written and signed; and
   b. The names of the individuals who entered into this agreement with you.

    ANSWER:

    See response to question 11.

13. Were the terms of your injury on duty leave of absence governed by a written document?

    ANSWER:

    Not that I am aware of.

14. If the answer to the preceding interrogatory is in the affirmative, please identify each such document by name and the date on which it was written.

ANSWER:

See response to question 14.

15. Please describe in detail the complete duties, responsibilities and functions of your position at the time you began your injury on duty leave of absence.

ANSWER:

Duties - Checking people, working security line. At the time I began my job I was working as a transitional employee working wherever I was needed, TC, Security, PSR, Gates. Responsibilities - helping passengers reissue tickets, rerouting, monitoring the Q, counting tickets, accounting.

16. Please describe in detail the state of your health prior to your injury on duty leave of absence, including:

a. The nature, extent and severity of any preexisting medical condition or disability;

b. Any treatment or therapy either ongoing or concluded within the year prior to the alleged occurrence of injury;

c. The names, addresses and phone numbers of all doctors, clinics and hospitals who had provided medical care to you for five (5) years prior to the alleged occurrence of injury and the dates on which care was provided; and

d. The date and location of your last physical examination before the alleged occurrence of injury.

ANSWER:

Prior to my inquiry my health was excellent.

    a. None

    b. None

    c. Dr. Beno Chaterjee, Wake Medical Hospital, Raleigh, NC
       Approximately 1993

    d. Dr. Beno Chaterjee - 1993

**17.** Please describe in detail the state of your health subsequent to the date on which you began your injury on duty leave of absence, including:

a. the nature, extent and severity of any subsequent medical condition or disability;

b. Any treatment or therapy, including but not limited to psychological and/or psychiatric treatment, since the date you began your injury on duty leave of absence;

c. The names, addresses and phone numbers of all doctors, clinics and hospitals who have provided medical care to you since the date you began your injury on duty leave of absence;

d. The date and location of your last visits with each of the doctors identified in subpart c; and

e. The names of all pharmacies from whom you have purchased or otherwise received prescription medications since the date you began your injury on duty leave of absence.

ANSWER:

Severe back injury and depression.

Back doctor - Dr. Audette, EBOS Health Clinic,
Dr. Farber - W. Palm Beach, FL

```
Psychologist - John Sullivan, E. Boston Health
Psychiatrist - Dr. Maura Malloy
Dr. Herrera, W. Palm Beach, FL
Psychiatrist - Janet Scholle, MD, W. Palm Beach, FL
Dr. George Smerick, Boynton Beach, FL
Womesh, Sanadeo - W. Palm Beach, FL
Mark Rogovin - Lantana, FL
Dr. Duran - W. Palm Beach, FL
Pharmacies - CVS, Winthrop, MA
            Eckerd, Jog Road, Lake Worth, FL
```

**18.** Have you ever filed or had filed on your behalf any other claim or suit for age or handicap discrimination?

ANSWER:

No

**19.** If the answer to the previous interrogatory is in the affirmative, please provide for each claim or suit:

   a. The date of filing;

   b. The employer involved;

   c. A complete description of the discrimination alleged; and

   d. The final disposition or disposition to this point in time if the claim or suit is still unresolved.

ANSWER:

See response to request 18.

**20.** Please identify, describe and provide any correspondence received by you from any member from American Airlines, Inc; confirming your separation from the company.

ANSWER:

Please see document responses.

21. Please identify, describe and provide any correspondence issued or completed by you or at your direction in which you requested reinstatement at American Airlines, Inc.

ANSWER:

Please see Document Responses..

22. Please identify, describe and provide any correspondence issued or completed by you or at your direction in which you requested rehiring by American Airlines, Inc.

ANSWER:

None, I was not considered a new hire.

23. Please state each and every fact upon which you rely to support the allegations made by you in your Complaint.

ANSWER:

On or about February of 2001 I was cleared to return to work by my treating physician, Dr. Farber (back) in March of 2001. I talked to Sharon Douglas and advised her of this.

On or about February, 2001 I was cleared to go back to work by Dr. Farber, starting March 17, 2001. I made numerous calls to HR, Medical Depts., both NYC and DFW, as to procedure. I was told by Betty, NYC Medical, that my back was not the issue anymore. Dr.

Yanow was interested only in clearance of my psychiatrist. My doctor issued a letter to Medical stating I was cleared to return to full duty, on or about the same time.

Throughout the process of me trying to get the clearance from AA's Medical Department there were several people that were hired in positions other than the position that I had. These people were paid substantially lower wages, younger, less benefits than I had, so the fact is I feel as though discrimination was present as I was diligently trying to get my job back.

**24.** Please identify each and every person who you believe was a witness to any of the facts and circumstances alleged in the Complaint.

ANSWER:

Christine Konevich

Sharon Douglas

Andrea Vallee

Betty NYC Medical Lead Nurse

Dr. Yanow

Dr. McKennas

Dr. Sahadeo

Joan Stack

George Nicosia

Elizabeth Rodriguez

Maureen Fanara

Diane Gallagher

Lenny Slaney

Joseph Cerra

Michelle Cerra (minor)

Karen Hunter, NYC-HR

Harriet? NYC-HR, per personal notes

25. With respect to each person whom you expect to testify at the trial of this action as an expert witness, please state:

a. The full name, residential address, business or professional address, employer and employer's address for each such expert;

b. The educational and professional background of the expert which you allege qualifies the expert to testify as to matters of opinion;

c. The title, publisher and date of publication of any and all publications by the expert;

d. The subject matter on which the expert is expected to testify; and

e. The substance of the facts and opinions to which the expert is expected to testify and the grounds therefore.

ANSWER:

I am informed by my attorney that no decision has been made as to whether an expert witness will be called in this case.

Signed under the pains and penalties of perjury this ___7d___ day September 2005.

*Doreen Cerra* (signature)
Doreen Cerra