UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No, 04-12095 RGS

| | |
|---|---|
| DOREEN CERRA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| AMERICAN AIRLINES, INC. | ) |
| | ) |
| Defendant | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The Defendant is not entitled to summary judgment because the undisputed facts show that there are material issues of fact that are in dispute. The Plaintiff has produced sufficient evidence to convince a reasonable fact finder that the Defendant's actions were motivated by discriminatory animus in violation of the M.G.L. c. 151B. Further, the Plaintiff has produced sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision and thus enable the plaintiff to sustain a finding of liability for intentional discrimination.

**I.   FACTS**

The Plaintiff Doreen Cerra ("Cerra") is a former passenger agent at American Airlines, Inc. ("AA") whose employment ended when she was terminated because of a perceived handicap. In 1996, Cerra suffered a back injury while on the job. (Plaintiff's Statement of Material Fact, ¶1. Hereinafter "SOF".) Thereafter, Cerra took a leave of absence from her position with AA. Cerra was on leave from July 1996 until September

1

of 1996. (SOF ¶2.) In July of 1997, because of complications from the aforementioned injury, Cerra began a second leave of absence from her position with AA. (SOF ¶3) During this second leave of absence, Cerra was determined to have suffered an injury compensable under the Massachusetts Workers Compensation Statute. (See Exhibit 8. DIA Lump Sum Agreement) Therefore, for the purposes of M.G.L. 151B, Cerra is a handicapped person. (See G.L. c. 152 §75B, attached as Exhibit 7.)  AA employees could take up a leave of absence for up to five years for the purposes of rehabilitation and recovery. (See Exhibit 6.) Contrary to the Defendant's assertion, the end of the five year period did not automatically result in the administrative termination of the employee. Indeed, the *Injury On Duty Leave of Absence Policy of AA*, specifically states that an employee has reinstatement rights and that supervisors "must have the same or similar job available in the same location for the employee upon return from leave." (See Exhibit 6, "Injury On Duty Leave of Absence.")  In the event that there was a disagreement between the company and the employee as to the employee's fitness to return to work, the AA Medical Department was to issue a written notification to the employee outlining the reasons why the employee could not return to work. (See Exhibit 5, AA Medical Services Functions. P. 5.)  If said letter was issued, the employee had fifteen (15) days from the receipt of said letter to appeal the decision (*Id.*) In the case before the bar, Cerra took all of the necessary steps in order to be cleared to return to work. (See Exhibit 2, pp. 161-63; Exhibit 9, Letter to Cerra Dated July 13, 2001; Exhibit 1; Exhibit 4) Having provided all of the required information to AA Medical, AA was required to either reinstate Cerra or to issue a letter to Cerra stating why she could not return to work. (See Exhibit 5, p.5) The company did neither. It simply terminated

2

Cerra. Moreover, in order to be able to challenge an AA Medical Department Decision, an employee needed to receive a letter from AA Medical telling the employee why he/she was not being allowed back to work. (See Exhibit 5, p. 5) Cerra never received said notification and there fore had nothing to appeal. (See Exhibit 2, pp. 162-63.)

I.  **STANDARD FOR SUMMARY JUDGMENT STANDARD**

Under Mass.R.Civ. P. 56(C), summary judgment should not be granted unless "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party bears the burden of affirmatively demonstrating the absence of a triable issue of fact and that it is entitled to judgment as a matter of law. *Pederson v. Time, Inc.* 404 Mass. 14, 16-17 (1989).

Where a moving party properly asserts that there is no genuine issue of material fact, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury *could* return a verdict for the plaintiff on the evidence presented." (Emphasis added) *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986). A judge's mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment. See *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir.1982); *American Int'l Group v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981). 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* s 2725, at 104-105 (1983). In assessing the record to determine whether there is a genuine issue of material fact, the court *must resolve all ambiguities and draw all factual inferences in favor of the non-moving party*. (Emphasis added) See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Thus, in determining whether a

genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. See, e.g., *United States v. Diebold*, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)

II.  **STANDARD FOR SUMMARY JUDGMENT IN EMPLOYMENT DISCRIMINATION CASES.**

The Supreme Judicial Court of Massachusetts, in cases alleging employment discrimination under G.L. ch. 151B, follows the three-stage order of proof as set forth by the United States Supreme Court under the Federal anti-discrimination provisions of Title VII." *Wheelock College v. Massachusetts Comm'n Against Discrimination"* 371 Mass. 130, 134-136 (1976).

In the first stage, the plaintiff has the burden to show by a preponderance of the evidence a *prima facie* case of discrimination. The elements of the plaintiff's initial burden may vary depending on the specific facts of a case. *Id.* The *prima facie* case "eliminates the most common non-discriminatory reasons for the plaintiff's rejection, thereby creating a presumption of discrimination." *Blare v. Husky Injection Molding Systems Boston Inc. & Another*, 419 Mass. 437, 441 (1995).

In the second stage, the employer can refute the presumption created by the prima facie case by articulating a nondiscriminatory reason for what it has done. *Wheelock College*, 371 Mass. at 136, quoting *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[A]n employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons

4

advanced were the real reasons." *Wheelock College,* 371 Mass. at 138. "If the defendant fails to meet its burden, however, then the presumption created by the preponderance of the evidence supporting a prima facie case entitles plaintiff to judgment." *Blare,* 419 Mass. at 442.

Once the defendant articulates a nondiscriminatory reason for the challenged action, the proceedings have reached the third stage in the order of proof. "[O]nce a plaintiff has established a prima facie case and further shows either that the employer's articulated reasons are pretext or by direct evidence that the actual motivation was discrimination, the plaintiff is entitled to recovery for illegal discrimination under M.G.L c. 151B." Id. at 444, quoting *Wheelock College,* 371 Mass. at 138.

The phrase "pretext for discrimination" in the context of G.L. 151B does not imply that the plaintiff must prove not only that a reason given by the employer for the adverse decision was false, but that the reason was given to cover a discriminatory animus. See *Abramian v. President & Fellows of Harvard College,* 432 Mass. at 118. Cf. *Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 128 (1997).

Rather, if a Plaintiff presents sufficient evidence from which a reasonable jury could find that at least one of the Defendant's reasons was false then from this the fact finder properly could infer that the Plaintiff suffered an adverse job action because of unlawful discrimination. See *Abramian v. President & Fellows of Harvard College,* 432 Mass. 107, 118, (2000.); *Lipchitz v Raytheon Co.* 434 Mass. 493 501 (2001); *Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 128 (1997).

In an indirect evidence case, if the fact finder is persuaded that one or more of the employer's reasons is false, it may (but need not) infer that the employer is covering up a

discriminatory intent, motive or state of mind. *Id* at 501. See also *Riffelmacher v. Police Comm'rs of Springfield,* 27 Mass. App. Ct. 159, 165 (1989). *(Lipschitz v Raytheon Company at 507.)*

The Plaintiff is required to prove that a causal link exists between the Defendant's alleged discriminatory behavior and the adverse employment action alleged. *Lipchitz at* 501 (2001).

However, to meet her burden of proof that discrimination was the determinative cause of the adverse employment decision, Cerra is not required to disprove every reason articulated by the Defendant or suggested in the evidence. *Id* at 506-507. See also *Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. at 9.* She could meet her burden by persuading the fact finder *that it was more likely than not* that at least one reason given by the employer for the adverse action was false. From such proof the fact finder could infer that American Airlines discriminatory animus was the determinative cause of the adverse employment decision. (Emphasis Added) *Lipchitz v Raytheon Company* at 507.

Finally, "The ultimate issue of discrimination, raised by the parties' conflicting evidence as to the defendant's motive, is not for a court to decide on the basis of briefs and transcripts, but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses." *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 445, (1995*).* See *Dartt v. Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1, 16, (1998*).*

### III. CERRA IS A HANDICAP PERSON WITHING THE MEANING OF G.L. c. 151B

a.  <u>Cerra Is A Handicap Person As A Matter of Law</u>

G.L. 152 §75B states that:

6

1. Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.

2. No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter, or who has testified or in any manner cooperated with an inquiry or proceeding pursuant to this chapter, unless the employee knowingly participated in a fraudulent proceeding. Any person claiming to be aggrieved by a violation of this section may initiate proceedings in the superior court department of the trial court for the county in which the alleged violation occurred. An employer found to have violated this paragraph shall be exclusively liable to pay to the employee lost wages, shall grant the employee suitable employment, and shall reimburse such reasonable attorney fees incurred in the protection of rights granted as shall be determined by the court. The court may grant whatever equitable relief it deems necessary to protect rights granted by this section.

3. In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail. An employee may not otherwise waive rights granted by this section.

Cerra suffered work related injuries, received compensation through the Department of Industrial Accidents and as a result Cerra is handicapped for the purposes of G.L. c 151B. (See Exhibit 8.)

b. Cerra Can Establish A *Prima Facie* Case of Handicap Discrimination

To establish a prima facie case of handicap discrimination under c. 151B, a plaintiff must show that: (1) she is handicapped within the meaning of the statute, (2) she is qualified to perform essential functions of the job with *or without a reasonable accommodation*, (3) she was terminated or otherwise subject to adverse action by her

7

employer. (Emphasis Added) *Dartt v. Browning-Ferris Industries, Inc.,* 427 Mass. 1, 10 (1998).

Cerra had produced evidence that she was handicapped within the meaning of the statute. She was qualified to perform the essential functions of her position with or without an accommodation and she was terminated. Therefore, Cerra has produced sufficient evidence to establish a *prima facie* case.

General Laws c. 151B, §4(17), defines "handicap" as (a) a physical or mental impairment that substantially limits one or more major life activities of a person; (b) a record of having such an impairment; or (c) *being regarded as having such an impairment.* (Emphasis added.)

To establish a prima facie case of handicap discrimination under c. 151B, a plaintiff must show that: (1) she is handicapped within the meaning of the statute, (2) she is qualified to perform essential functions of the job with or without a reasonable accommodation, (3) she was terminated or otherwise subject to adverse action by his employer. *Dartt v. Browning-Ferris Industries, Inc.,* 427 Mass. 1, 10 (1998).

EEOC's implementation regulations, defines "substantially limits" as:

> Significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.
> 29 C.F.R. § 1630.2(j)(3)(i)).

Although the regulations do not define the terms "class of jobs" or "broad range of jobs," the Appendix to Part 1630 provides examples of relevant limitations, notably:

> An individual who has a back condition that prevents [her] from performing any ...lifting would be substantially limited in the major life activity . . . because [her] impairment eliminates her . . . ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs.

8

quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j).

The Plaintiff respectfully suggests that using these criteria, she is handicapped within the meaning of M.G.L. c. 151B.

Moreover, the Department of Industrial Accidents found that Cerra was temporally totally incapacitated and also suffered from a partial incapacity. (See Exhibit 10.) Such a finding by the Department of Industrial Accidents is binding on this court. Alba v Raytheon, 441 Mass. 836; 842-45 2004 Mass

Second, even if the Court could somehow determine that Cerra is not handicapped, this would not end the inquiry. General Law c. 151B, §4(17), states that an individual may be considered handicapped if the individual *is regarded by the employer as having such an impairment*. (Emphasis added.)

> The Massachusetts Commission Against Discrimination ("MCAD") follows the principle that:
>
>> A person is considered to be "handicapped" if s/he has a past record or medical history of a physical or mental impairment that substantially limits one or more major life activities, even though the impairment may no longer exist. For example, a person who was treated for cancer five years earlier but who has been cancer-free since that time may still be entitled to protection under the law as a "handicapped person."
>
> Commonwealth of Massachusetts - Commission Against Discrimination Guidelines: Employment Discrimination on the Basis of Handicap- Chapter 151B.

The MCAD held that under G.L. c. 151B, § 4(16) a person may be considered handicapped if she or he has a past record of impairment, even if the impairment no longer exists, or if the person never had an impairment but *was perceived by the employer as having one*. (Emphasis Added) Ryan v. Town of Lunenburg, 11 MDLR 1215, 1236-37

(1989). .Clearly AA considered Cerra as handicapped because they refused to allow her to return to her former position despite the fact that Cerra had been cleared to return to work .without accommodation by her physicians. (See Exhibits 1 & 4.) Even if the Company believed that it was no longer possible for Cerra to fulfill the basic requirements of a passenger service agent, they were not free simply to terminate her employment or to tell her "heal thyself" or be fired. The company could have reassigned Cerra to the same position and allowed her to bid for a ticket counter position. (See Exhibit 3, Deposition of Andrea. Valle pp. 28-34; 36-37; 40; 42-43; 45-46.)

a. <u>Cerra's Separation from the Company Did Not Result from the Application of a Facially Neutral Policy</u>

The Defendant's argument that Cerra termination from employment was a result of the application of a facially neutral nondiscriminatory policy is not supported by the facts of this case. On or about July 13, 2001, Cerra received a letter from AA stating that she was required to submit medical documentation of her medical condition before July 27, 2001. (See Exhibit 9.) Cerra submitted said information on or before the date in question. (See Exhibits 1 and 4.) Once Cerra made this submission, AA was required either to return her to work or to send Cerra a letter detailing why they disagreed with the recommendations of Cerra's care givers. This, AA did not do. Rather, Cerra was simply terminated from her position with the company. Later in a submission to MCAD, the company asserted that the termination was due to the fact that she was unable to perform one of the essential functions of her position. AA stated that, given the medications Cerra was taking, it would have posed a safety hazard for Cerra to operate a Jet Bridge and the operation of the jet bridge was an essential function of the job. (See Exhibit 4, p.

3.) However, the operation of a jet bridge was not an essential function of Cerra's job and, indeed, Cerra could have returned to her job and never have operated a jet bridge. (See Exhibit 3, Deposition of Andrea. Valle pp. 28-34; 36-37; 40; 42-43; 45-46.).) Further, similarly situated employees were working as passenger service agents and were not only not required to operate a jet bridge, they were not even trained to operate said bridge. (See Exhibit 3, Deposition of Andrea. Valle pp. 28-34; 36-37; 40; 42-43; 45-46.).) Moreover, absent a letter from AA Medical, it was impossible for Cerra to avail herself of the appeal process. (See Exhibit 5, p.5.) That process required her to submit an appeal within fifteen (15) days of having received a written response from AA Medical. Absence the written response, there is no procedure outlined that would allow for an appeal. The defendants have not produced such a writing and Cerra testified that she had never received such a letter. (See Exhibit 2, pp. 162-63.)

Cerra's burden at this stage of the litigation is to produce evidence that could persuade a reasonable fact finder that *it was more likely than not* that at least one reason proffered by the defendant was false. From such proof the fact finder could infer that discriminatory animus was the determinative cause of the adverse employment decision. (Emphasis Added) *Lipchitz v Raytheon Company* at 507. The Plaintiff respectfully suggests that she has met her burden.

b. There was No Inaction On Cerra's Part that would Preclude Any Nexus Between Cerra's Separation from Employment and AA's Discriminatory Animus

The Defendant's argument that somehow Cerra failed to act and this inaction was the cause of her termination from employment is unsupported by the facts. Again, on or about July 13, 2001, Cerra received a letter from AA stating that she was required to

11

submit medical documentation of her medical condition before July 27, 2001. Cerra submitted said information on or before the date in question. (See Exhibits 1 and 4.) Once Cerra made this submission, AA was required either to return her to work or to send Cerra a letter detailing why they disagreed with the recommendations of Cerra's care givers. This AA did not do. Rather, Cerra was simply terminated for her position and then told that the termination was due to the fact that she was unable to perform one of the essential functions of her position.[1] Absent a letter from AA Medical, it was impossible for Cerra to avail herself of the appeal process. (See Exhibit 5, p.5.) That process required her to submit an appeal within fifteen (15) days of having received a written response from AA Medical. Absence the written response, there is no procedure in place that would allow Cerra to appeal this decision.

    Cerra's burden at this stage of the litigation is to produce evidence that could persuade a reasonable fact finder that *it was more likely than not* that at least one reason proffered by the defendant was false. From such proof the fact finder could infer that discriminatory animus was the determinative cause of the adverse employment decision. (Emphasis Added) *Lipchitz v Raytheon Company* at 507. The Plaintiff respectfully suggests that she has met her burden.

c. <u>Cerra's Disability Claim Does Not Fail Because She Never Sought a Reasonable Accommodation.</u>

    The Defendant argues that Cerra's claim of handicap discrimination must fail because she never sought a reasonable accommodation. The Defendant has misstated

---

[1] The only job description provided by the defendants is completely out of date. Said description contains requirements that are now illegal. (See Exhibit 3, pp. 22-26.) The Plaintiff respectfully suggests that a reasonable fact finder might conclude that this job description is inaccurate in number of areas and that it is impossible to determine what is or is not an essential function of the job of passenger service agent. (See Exhibit 11, Job Description.)

12

both the facts of the case and the law governing this matter. Under G.L. c. 151B, a plaintiff must show that: (1) he is handicapped within the meaning of the statute, (2) he is qualified to perform essential functions of the job with *or without a reasonable accommodation*, (3) he was terminated or otherwise subject to adverse action by his employer. (Emphasis Added) *Dartt v. Browning-Ferris Industries, Inc.*, 427 Mass. 1, 10 (1998).

Cerra was cleared to return to work without accommodation by both of her physicians. (See Exhibits 1 & 4.) The Defendant asserts that AA Medical determined that Cerra could not return to work because of the medication she was taking. (See Defendant's SOF ¶11.) However, the Defendants SOF ¶11 states that Cerra was informed by Ms. Vale that it was her *understanding* that Cerra return to work was not being processed because of concerns by medical that her medication would interfere with her work, (Emphasis added.) (*Id.*) Valle testified that she did not know why Cerra was not cleared to return to work. . (Exhibit 2, pp. 15-20.) The Plaintiff respectfully suggests that this is not notification by AA Medical. Further, the Defendant has not produced any communication from AA Medical to Cerra that her return to work was inhibited by the medication she was taking. The Defendant has not been able to produce such a communication because no such communication took place. Such a missive was required by AA's own internal regulations. (See Exhibit 5, p.5.) To argue that Cerra did not seek an accommodation when she was not informed as to why she was refused work is to turn both the law and logic on their respective heads. The Plaintiff could not request an accommodation because she did not know why she was not cleared for a return to work.

However, even assuming that AA Medical communicated with Cerra as to the reason she was being denied her former position with AA, the alleged failure of Cerra to request an accommodation is not fatal to her case. MCAD Guidelines on Handicap Discrimination reads in part

### A. Notice and Duty

An employer should notify all applicants and employees of its obligation to provide reasonable accommodation. Further, an employer should notify employees that an applicant/employee may request a reasonable accommodation if s/he is handicapped and requires an accommodation.

The employer's duty to provide reasonable accommodation is triggered if an employee identifies him/herself as a qualified handicapped person and requests reasonable accommodation. Where an employee has not requested reasonable accommodation, *an employer's duty to offer reasonable accommodation may still be triggered if the employer knows or should know that the employee is handicapped and requires reasonable accommodation. An employer should know that an employee is handicapped and requires reasonable accommodation if a reasonable person in the employer's position would know the employee was handicapped and required reasonable accommodation.* If an employee with a disability about which the employee knows or should know is having difficulty performing his or her job, an employer may inquire whether the employee is in need of a reasonable accommodation. In general, however, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation. (Emphasis Added)

<u>Commonwealth of Massachusetts - Commission Against Discrimination Guidelines: Employment Discrimination on the Basis of Handicap- Chapter 151B.</u>

Therefore, where an employer knows or should have known that an employee is handicapped; the employer is still required to offer a reasonable accommodation to the employee even if that employee has not requested an accommodation. Here the employee offered to the employer evidence that she could return to work without

14

accommodations and the employer presumably determined that she could not.[2]

Therefore, it was the employer's determination that the plaintiff was handicapped and some form of accommodation was needed. In accordance with MCAD Guidelines it was the employers responsibility to offer a reasonable accommodation. (See MCAD Guidelines, Notice of Duty.)

Federal Courts have held that once it becomes clear that an employee can no longer perform the essential functions of his/her former position, reassignment, as a reasonable accommodation, is "consistent with the language from the House Report on the bill that became the ADA:" (See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (rejecting the defendant's argument that the "ADA does not obligate an employer to reassign an employee to a different type of position where the employee . . . can no longer perform the essential functions of the job she currently holds"). Federal Courts have recognized in *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667 (7th Cir. 1998) and in *Gile* that, "If an employee, because of his disability, can no longer perform the essential functions of the job that he or she has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and employer from losing a valuable worker." (*Dalton*, 141 F.3d at 678-79 (quoting H.R. Rep. No. 485(II), 101st Cong., 2d Sess. (1990), U.S.C.C.A.N. 1990, 267); see also *Aka v. Washington Hosp. Ctr.*, 332 U.S. App. D.C. 256, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (en banc) (same); see also *Burns*, supra.

---

[2] The Plaintiff uses the word presumably because there is no evidence presented as to what AA Medical did or did not determine. Moreover, Valle testified that Airport Passenger Service Agents were not required to operate Jet Bridges (See Exhibit 3, Deposition of Andrea. Valle pp. 28-34; 36-37; 40; 42-43; 45-46.)

15

What is a reasonable accommodation is an objective analysis, not a subjective one *dominated by either party's concerns.* (Emphasis added) *Williams* supra 350). In assessing objective reasonableness, the governing statute (ADA) provides guidance. (See 42 U.S.C. § 12111(9)). It provides that "'reasonable accommodation' may include" a number of listed measures; obviously Congress considered these types of accommodations to be reasonable. Examples in § 12111(9)(B) include "job restructuring, . . . reassignment to a vacant position, [and] acquisition or modification of equipment or devices." Thus, we respectfully suggest that AA was under an obligation to work with Cerra to see if alternative employment was available to her and this they did not do. (*Dalton*, 141 F.3d at 678-79 (quoting H.R. Rep. No. 485(II), 101st Cong., 2d Sess. (1990), U.S.C.C.A.N. 1990, 267); see also *Aka v. Washington Hosp. Ctr.*, 332 U.S. App. D.C. 256, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (en banc) (same); see also *Burns*, supra; *Williams* supra 350

In this case, as in *Gile*, the issue is the extent to which an employer is "obligated to reassign [a disabled employee] to a different position when, as a result of [his] disability, [that employee can] no longer perform the essential functions of [his] job." Ibid. As several courts have recognized, the ADA only protects "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or *desires*." (Emphasis added) 42 U.S.C. § 12111(9); *Gile*, 95 F.3d at 498.

The ADA places a duty on the employer to 'ascertain whether he has some job that the employee might be able to fill.'" *Dalton*, 141 F.3d at 677 (quoting *Miller v.*

*Illinois Dep't of Corrections*, 107 F.3d 483, 487 (7th Cir. 1997)). As the Court observed in *Dalton*:

> "The employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations. The employer's duty to accommodate requires it to consider transferring the employee to any of these other jobs, including those that would represent a demotion."
> 141 F.3d at 678 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

In construing the Commonwealth's employment discrimination statute, Massachusetts Courts have looked to the considerable case law applying the analogous Federal statute for guidance. See *Cox v. New England Tel. & Tel. Co.* 414 Mass. 375, 382, 607 (1993); *White v. University of Mass. at Boston,* 410 Mass. 553, 557 (1991) (analysis of discrimination claim essentially same under State and Federal statutes). *Tate v. Department of Mental Health* 419 Mass 356 361 (1995). Therefore, the Plaintiff respectfully suggests that an employer has a duty under 151B to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified. No such attempt was made in this case (See Defendants' Statement of Facts) and therefore the Plaintiff has produced sufficient evidence to defeat the Defendants' Motion for Summary Judgement.

**IV    CERRA'S CLAIM OF AGE DISCRIMINATION MAY STAND**

In Massachusetts, the plaintiff who alleges age discrimination must at the initial stage show that (1) he is a member of a protected class within the meaning of G.L. c. 151B; (2) he performed his job in an acceptable manner; (3) he was terminated; and (4)

the employer sought to fill the plaintiff's position by hiring another individual with similar qualifications to the plaintiff. *Blare*, 419 Mass. at 441. It is not necessary that a plaintiff show that an adverse employment action was motivated solely by the defendant's animus towards his age. It is only necessary for the plaintiff to show that age played a factor in the defendant's decision. *Dartt*, 427 Mass. at 2.

There is no dispute that Cerra was over the age of 40 when she was terminated. Moreover, the Defendant has produced no evidence that Cerra's job performance had been problematic during her tenure at AA.

Cerra produced evidence that her supervisor made comments about her age (See Cerra Depo. Vol II pp. 171-72) and that AA had hired individuals younger than she. (Id. at 216-17.) Moreover, the Plaintiff produced evidence that employees similarly situated to her who were younger than Cerra were allowed to remain in the position of passenger service agent even though they were not qualified to operated a jet bridge. (See Depo of Valle, pp. . 28-34; 36-37; 40; 42-43; 45-46.)

Cerra's burden at this stage of the litigation is to produce evidence that could persuade a reasonable fact finder that *it was more likely than not* that at least one reason proffered by the defendant was false. From such proof, the fact finder could infer that discriminatory animus was the determinative cause of the adverse employment decision. (Emphasis Added) *Lipchitz v Raytheon Company* at 507. The Plaintiff respectfully suggests that she has met her burden.

## V.   CONCLUSION

For all of the above reasons, the plaintiff respectfully requests that this Honorable Court deny the defendant's Motion for Summary Judgment.

Doreen Cerra
By her attorney

*James R. Tewhey*
James R. Tewhey
BBO# 634810
19 North Street
Salem, MA 01940
978-741-2255

Date: March 13, 2006

## CERTIFICATE OF SERVICE

I, James R. Tewhey, attorney for the plaintiff, hereby certify that a copy of the attached document was delivered by first class mail, postage prepaid, on March 13, 2006 to all attorney/s of record.

*James R. Tewhey*
James R. Tewhey