Duty leave. In those situations, the later Injury on Duty leave will be considered a new Injury on Duty leave. Life/Health/Disability benefits are only available from the date of the first leave up to a maximum of two years.

**SUPERVISOR
RESPONSIBILITY**

Once an IDOL has been authorized, it is your responsibility to ensure that the proper procedures outlined below are followed:

- Prepare the Employee Information Letter for IDLOA for employee signature and advise the employee of benefit eligibility during the leave.

- Process all required payroll authorizations using SABRE DECS mask RF 5900 RMG and transaction code 13. Make sure you include the intended duration of the leave. Place the original signed payroll authorization in the employee's personnel file.

- Monitor the leave during the agreed upon duration and update the attendance records accordingly.

- Pay SK and VC benefits at the beginning of each year if the employee requests such payment. To authorize payment, send an AMS message to Payroll - TUL, HDQPYAA, using the format found in SABRE/DECS by accessing RF 1 VAC.

- If the employee is a Flexible Benefits participant and elected purchased vacation, request a refund of vacation monies if the employee will be on a leave of absence at the end of the year and did not use their vacation. This request must be received by PeopleLink by December 15 of each year. See SABRE Star record N*FLEX VC REFUND. █████

- Because the employee has reinstatement rights, you must have the same or similar job available in the same location for the employee upon return from the leave.

- When the employee is ready to return to work, ensure that the employee has completed the necessary medical clearance procedures. See the Medical Services Function section for information on these procedures.

- To bring the employee back to active status, complete a Payroll Authorization Message using transaction code 07. Place a photocopy of the signed payroll authorization in the employee's personal file and send the original to PA Processing, K27 TUL.

*END*
*Issued by Corporate Human Resources*

RETURN TO TOP

**EXHIBIT 7**

LEXSTAT MASS. ANN. LAWS MASS.ANN.LAWS CH 152 § 75B

ANNOTATED LAWS OF MASSACHUSETTS
Copyright (c) 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** THIS DOCUMENT IS CURRENT THROUGH CHAPTER 120, 10/27/05 ***

PART I.  ADMINISTRATION OF THE GOVERNMENT
TITLE XXI. LABOR AND INDUSTRIES
CHAPTER 152.  WORKERS' COMPENSATION
MISCELLANEOUS PROVISIONS

### GO TO MASSACHUSETTS CODE ARCHIVE DIRECTORY

*ALM GL ch. 152, § 75B (2005)*

§ 75B. Qualified Handicapped Persons; Discrimination Prohibited; Violation by Employer; Disclosure of Data Maintained by Department.

(1) Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.

(2) No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter, or who has testified or in any manner cooperated with an inquiry or proceeding pursuant to this chapter, unless the employee knowingly participated in a fraudulent proceeding. Any person claiming to be aggrieved by a violation of this section may initiate proceedings in the superior court department of the trial court for the county in which the alleged violation occurred. An employer found to have violated this paragraph shall be exclusively liable to pay to the employee lost wages, shall grant the employee suitable employment, and shall reimburse such reasonable attorney fees incurred in the protection of rights granted as shall be determined by the court. The court may grant whatever equitable relief it deems necessary to protect rights granted by this section.

(3) In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail. An employee may not otherwise waive rights granted by this section.

(4) Upon a determination by the commissioner that a request for data maintained by the department is intended to be used in such a manner as to violate the purposes of this section, the commissioner may find that the disclosure of such data constitutes an unwarranted invasion of personal privacy pursuant to chapter four and deny said request. Nothing in this section shall be construed to prohibit an insurer's right to obtain any information held by the department regarding any employee who has filed a claim against such insurer.

**HISTORY:** 1985, 572, § 58; 1986, 662, § 49; 1991, 398, § 94

**NOTES:**

EDITORIAL NOTE--

The 1986 amendment, in the third sentence of paragraph (2), after "determined by the", replaced "member" with "court".

The 1991 amendment added subsection (4).

**EXHIBIT 8**

FROM : MAIL EXPRESS                PHONE NO. : 5616419226          Jan. 14 2002 07:45AM P2

### THE COMMONWEALTH OF MASSACHUSETTS
### DEPARTMENT OF INDUSTRIAL ACCIDENTS
### 600 WASHINGTON STREET
### BOSTON, MA 02111

## AGREEMENT FOR REDEEMING LIABILITY BY LUMP-SUM SETTLEMENT UNDER M.G.L. CH. 152
### For Injuries occurring on or After November 1, 1986

EMPLOYEE  Doreen Cerra                     AMOUNT OF LUMP SUM  $37,500.00

EMPLOYER  American Airlines                TOTAL DEDUCTIONS   $ 7,000.00

INSURER  Hartford Insurance Company        NET TO CLAIMANT    $30,500.00

BOARD NUMBER  05346896                     TOTAL PAYMENTS     $82,693.06
                                           **(Weekly Benefits Plus Lump-Sum)**
DATE OF INJURY  7/17/96

## CHECK WHERE APPLICABLE

(X)  Liability has been established by acceptance or by standing decision of the Board, the Reviewing
     Board, or a court of the Commonwealth and this settlement shall not redeem liability for the
     payment of medical benefits and vocational rehabilitation benefits with respect to such injury.

( )  Liability has not been established by acceptance or by standing decision of the Board, Reviewing
     Board or a court of the Commonwealth and this settlement shall redeem liability for payment of
     medical benefits and vocational rehabilitation benefits with respect to such injury.

(X)  In addition to the lump-sum, the insurer agrees to pay all outstanding reasonable and related
     medical bills incurred as of this date.

( )  The employee is currently receiving a cost-of-living adjustment.

DEDUCTIONS  From lump-sum amount as stated above, the amounts listed below will be deducted and
            paid directly to the following parties:

|  | NAME | ADDRESS |
|---|---|---|
| $ 7,000.00 | Law Offices of Juliane Soprano | P.O. Box 543, Falmouth, MA 02541-0543 |
| Lawyer's Fee | | |
| $ | | |
| Lawyer's Expenses | (Please attach documentation) | |
| $ | | |
| Liens | (Please attach discharges) | |
| $ | | |
| Inchoate Rights | (Please specify release) | |
| $ | | |
| $ | | |
| $ | | |

DEPARTMENT OF INDUSTRIAL ACCIDENTS
DIVISION OF DISPUTE RESOLUTION
APPROVED
MAR
by
Administrative Judge
Sec 11.5. 152

FROM : MAIL EXPRESS                    PHONE NO. : 5616419226                  Jan. 14 2002 07:46AM P3

~~calculated by prorat, , the net lump sum of $30,  0 over the
claimant's life expectancy of 2,033.2 weeks.  Original compensation
rate was $424.35.

## AGREEMENT FOR REDEEMING LIABILITY FOR LUMP-SUM

### EMPLOYEE MEDICAL INFORMATION

Age 42 _____ No. of dependents 3 _____ AWW $ $707.26 _____ Comp. Rate $ *15.00.

SSN # _027_  _48_  _1606_  Occupation Ticket Agent _____ Educ. Background  High School

On Social Security Disability:   YES ( )   NO (X)

On Public Employee Disability Retirement:   YES ( )   NO (X)

DIAGNOSIS Chronic Pain Syndrome _____ PRESENT MEDICAL CONDITION  Stable

Present Work Capacity  Not working _____ Third Party Action  N/A

Give brief history and reasons why settlement is in the employee's best interest.
  (Please specify any allocations)

see attached

(Please Attach separate sheet if necessary)

Received of  Hartford Insurance Company _____ the lump-sum

of  Thirty-seven Thousand Five Hundred ------------------------------------------------------ Dollars and Zero  Cents.

$ $37,500.00 _____ ). This payment is received in redemption of the liability for all weekly payments

now or in the future due me under the Workers' Compensation Act for all injuries received by  Doreen Cerra

on or about  July 18, 1996 _____ while in the employ

of  American Airlines _____ .

I understand that after all of the deductions herein, I will receive the net of  $ $30,500.00 _____ .

I am fully satisfied with and request approval of this settlement.  The Agreement has been translated to me in my

native language of  English _____ .

| SIGNATURE | ADDRESS | ZIP |
|---|---|---|
| CLAIMANT: Doreen E. Cerra | 6156 Newport Village Way, Lake Worth, FL | 33463 |
| CLAIMANT'S COUNSEL | Juliane Soprano, Esq., P.O. Box 543, Falmouth, MA | 02541-0543 |
| INSURER'S COUNSEL : | John Canniff, Esq., 50 Rowes Wharf, Boston, MA | 02110 |

Signed this 9th _____ day of  March _____ , 1999

FROM : MAIL EXPRESS    PHONE NO. : 5616419226    Jan. 14 2002 07:46AM P4

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF INDUSTRIAL ACCIDENTS

EMPLOYEE:       DOREEN CERRA
EMPLOYER:       AMERICAN AIRLINES
INSURER:        HARTFORD INSURANCE COMPANY
D/O/I:          7/18/96
BOARD NO.:      05346896

### AFFIDAVIT OF EMPLOYEE

I, Doreen Cerra under oath do depose and say:

1. I am a resident of the State of Florida. I currently reside at 6156 Newport Village Way, Lake Worth, FL 33463 and my telephone number is 561-434-4176.

2. On or about July 18, 1996, while employed at American Airlines as a ticket agent, I injured my back while moving baggage.

3. I initially came under the care of Dr. Albert Franchi, an orthopedist, who diagnosed me with a lumbosacral strain. He referred me to physical therapy and released me to light duty work. Upon my return to work I was assigned to the accounting department to do filing and paperwork.

4. In September of 1996 I attempted to return to work in my original position as a ticket agent. However, due to increased back and leg pain I was unable to continue in this position. Following the development of these symptoms, Dr. Franchi referred me for an MRI of my lumbar spine which showed a disc protrusion at L1-2.

5. I continued to work in several different part-time modified positions with American Airlines until May of 1997. At that time, Dr. Joseph Audette, a physiatrist, recommended that I leave work.

6. The worker's compensation insurance company initially denied my case. A claim was filed with the Department of Industrial Accidents and an Agreement to Pay Compensation was signed on July 18, 1997. I was paid §34 benefits from May 6, 1997 to July 18, 1997 and §35 benefits from that date forward at the maximum compensation rate of $318.26. The insurance company also agreed to pay for psychiatric treatment through December of 1997 as I had been feeling very depressed and requested counseling.

7. In August of 1997 I relocated to Florida and began treating with a neurologist, Dr. Morris Shalamowitz. He suggested that I consider epidural and facet blocks. He also recommended that I reenter physical therapy and continue my psychological counseling. I began to see a clinical psychologist, Dr. Maura Molloy and a psychiatrist, Dr. Edward Herrara.

8. At the beginning of 1998, the insurer filed a request to discontinue my benefits. I joined a claim for continuing medical treatment as my request for further physical therapy and psychiatric treatment had been denied by the insurance company.

9. In May 1998 a conference was held before Judge Taub and an order issued denying the insurance company's request to discontinue my benefits. The Judge also order the insurance company to pay for my physical therapy and counseling. The insurance company appealed this decision.

10. In October of 1998 I was examined by an Impartial physician, Dr. Andrea Wagner, who diagnosed me with a chronic pain syndrome and depression. Dr. Wagner opined that I was partially, temporarily disabled and gave me a physical restriction of no lifting over 15 pounds.

11. This case was settled pending a hearing on the insurer's appeal.

12. I understand that by settling my worker's compensation case I am giving up my right to seek future weekly compensation payments from ITT Hartford. However, ITT Hartford is still responsible for payment of my medical bills which are reasonable, necessary and related to my work injury.

13 . I also understand that I have the right to be evaluated by the Office of Educational and Vocational Rehabilitation (OEVR) to determine whether I qualify for any type of vocational services from the Department of Industrial Accidents. I understand that I have two years from the date this settlement is approved to contact OEVR and apply for these benefits.

11. Juliane Soprano has acted as my attorney through my case and has authority to act on my behalf in the lump sum of my case.

12. I would like the Administrative Judge to approve this agreement since I am anxious to fully resolve my claim.

-3-

Signed under the pains and penalties of perjury, this___3___
day of _MARCH_____, 19 99___.

Doreen E. Cerra
Claimant's Signature

STATE OF  FLORIDA

Dated: 03/03/99

Before me this date appeared the above named, Doreen Cerra and
acknowledged to me that the foregoing is his free act and deed:


Notary Public
My commission expires:

B. PRABHAKER RAO
MY COMMISSION # CC 780693
EXPIRES: 12/07/2002
1-800-3-NOTARY   Fla. Notary Services & Bonding Co.



## The Commonwealth of Massachusetts

### Department of Industrial Accidents

600 Washington Street

Boston, Mass. 02111

James J. Campbell
Commissioner

DOREEN E CERRA
6156 NEWPORT VILLAGE WAY
LAKEWORTH, FL 33463

| | |
|---|---|
| Employee: | DOREEN E CERRA |
| Employer: | AMERICAN AIRLINES |
| Insurer : | HARTFORD INSURANCE COMPANY |
| D.I.A. #: | 5346896 |

### ORDER DENYING MODIFICATION OR DISCONTINUANCE

This complaint requesting a modification or discontinuance of
compensation came before me for conference under the provisions
of M.G.L. c.152, §10A, on May 26, 1998 at BOSTON,
Massachusetts.  The complainant was represented by SUSAN F
KENDALL ESQ, and the employee was represented by JULIANE
SOPRANO ESQ.

Based on information available at the conference, I decline to
authorize the insurer to modify or discontinue payment of
weekly compensation. Additionally, the insurer is to provide
continued medical benefits under M.G.L. c.152, §13 and §30,
those benefits to include payment for prescribed physical
therapy and psychological counseling.

The insurer is ordered to pay a fee to employee counsel
pursuant to M.G.L. c.152, §13A(4), in the amount of $822.06,
plus expenses.

Any party aggrieved by this Order shall have fourteen days from
the filing date of such Order within which to file an appeal
for a hearing pursuant to M.G.L. c.152, §11.  Such appeal shall
be filed with Department 121, Department of Industrial
Accidents, 600 Washington Street, Boston, MA 02111.

cel



FRED TAUB,
Administrative Judge
Department of Industrial Accidents

# EXHIBIT 9

July 13, 2001

**PERSONAL AND CONFIDENTIAL**
**TO BE OPENED BY ADDRESSEE ONLY**
**VIA FEDERAL EXPRESS**

Doreen Cerra #044297
6156 Village Way
Lake Worth, Fla. 33643

Dear Doreen,

Please be advised that your extended Injury Leave of Absence, which commenced on May 16, 2001, has expired effective June 16, 2001. The Medical Department has informed me that you have failed to provide the medical information needed to substantiate your continued absence from work.

AA Medical must authorize an Injury on Duty Leave of Absence (IDLOA). It is your responsibility to ensure that AA Medical has timely information from your medical provider that includes the reason for an extension of the leave and the approximate duration of the leave..

This is in accordance with American Airlines NavigAAtor, Section 5-11 "Time Away From Work", which states in part:

"... This leave may be extended in order for you to recover, but at no time will the total leave period extend beyond five years. All extensions are subject to authorization by the AA Medical department..."

You are hereby directed to provide the required medical documentation to the AA Medical department no later than the close of business on July 27, 2001. Failure to secure the extension for your leave of absence will terminate your employment with American Airlines.

Please ensure that your physician faxes the following information to American Airlines Medical Department at 718-632-3763:

Diagnosis /Results of diagnostic testing /Prognosis /Treatment, including medications

Expected return to work date /Expected return to work status

Sincerely,

Andee Valle
Customer Service Manager   ~ Phone   617 - 634 - 5127

av
cc: Dr. James Yiannou - AA Medical
   Field Human Resources - Sharon Douglas
                           Phone 617 - 634 - 5135

AMERICAN AIRLINES
LOGAN INTERNATIONAL AIRPORT
EAST BOSTON, MA 02128

**EXHIBIT 10**

FORM 113



THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF INDUSTRIAL ACCIDENTS - DEPARTMENT 113
600 WASHINGTON STREET - 7TH FLOOR, BOSTON, MA 02111
AGREEMENT TO PAY COMPENSATION

DIA BOARD NO.:

5346896

ENTER IF KNOWN

PENALTIES UNDER M.G.L. 152, SECTION 8(1) SHALL RESULT IF PAYMENT PURSUANT TO THIS AGREEMENT IS NOT MADE WITHIN 14 DAYS OF THE INSURER'S RECEIPT OF THIS DOCUMENT FROM THE EMPLOYEE. THIS FORM MUST BE FILED WITH THE DEPARTMENT AND WILL NOT BE RETURNED TO THE PARTIES.
CODES ARE ON THE REVERSE SIDE. PLEASE PRINT OR TYPE:

1. Employee's Name (Last, First, MI)  CERRA, DORFEN
2. Date of Birth (mm/dd/yy)  8/1/56
3. Social Security Number*  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

4. Home Address (No. and Street, City, State, Zip)  26 George St., Winthrop, MA. 02150

5. Employer's Name  AMERICAN AIRLINES
6. Self-Insured?  ☐ Yes ☒ No
7. Self-Insurer No.:

8. Employer's Address (No. and Street, City, State, Zip)  LOGAN AIRPORT, East Boston MA.

9. Insurance Carrier's Name and Address  ITT Hartford Specialty Risk, 7 World Trade Center, New York, N.Y. 10048-1198
10. Claims Representative's Name  Jennifer Morais
11. Insurer's Case File Number  G86C0808
12. Claims Representative's Telephone (  ) 800 301 3093 x 8349

13. Date of Injury (mm/dd/yy)  7/18/96
14. Nature of Injury Code(s)  a. 310  b.  c.

15. If Employee Has Died, Date of Death (mm/dd/yy)  / / N/A.
16. Body Part Code(s)  a. 600  b.  c.

17. Description of Injury (Left Leg...Lower Back...)  LOW BACK.

18. Describe How Injury/Exposure Occurred (Struck By...Fell From...Exposed To...)  LIFTING BAGGAGE.

19. First Date of Total or Partial Incapacity to Earn Wages (mm/dd/yy)  9/18/96
20. Fifth Date of Total or Partial Incapacity to Earn Wages (mm/dd/yy)  9/15/96

21. Average Weekly Wage $ 707.26  ☐ Estimated ☒ Actual
22. Number of Dependents  3

THE PARTIES AGREE TO COMPENSATION IN ACCORDANCE WITH THE FOLLOWING SCHEDULE:

23.

APPROVED BY

TYPE OF COMPENSATION

| | | AMOUNT PAID-TO-DATE OR ONE-TIME COMPENSATION AMOUNT | AGREEMENT PERIOD | | WEEKLY COMPENSATION AMOUNT |
|---|---|---|---|---|---|
| | | | FROM DATE | TO DATE (IF APPLICABLE) | |
| a. ☐ | Surviving Spouse Coverage (s.31) | $ | / / | / / | $ |
| b. ☐ | Burial Expenses (s.33) | $ | | | $ |
| c. ☐ | Temporary, Total Incapacity (s.34) | $ | 5/6/97 | 7/18/97 | $ 424.36 |
| d. ☐ | Permanent & Total Incapacity (s.34A) | $ | | | $ |
| e. ☒ | Partial Incapacity (s.35) | $ MAXIMUM | 7/19/97 | until ??? | $ 318.28 |
| f. ☐ | Dependency Coverage (s.35A) | $ | / / | | $ |

g. SPECIFIC PERMANENT INJURIES/SECTION 36  Please set out the subsection under Section 36 and the amount of payment.
Attorney's Fee  13A(1) = $803.58

Other (Specify):  Medical bracht Sections 13&30  Physical Component  until 12/31/97

24. Preparer's Signature
25. Date (mm/dd/yy)  7/18/97

26. Name of Employee's Attorney  Julie SOBRAND
28. Date (mm/dd/yy)  7/18/97

Attorney's Signature  Julie Sobrand
30. Date (mm/dd/yy)  7/18/97
Employee's Signature  Dorfen Cerra (by counsel)

JOHN J. CANIFF, ESQ.
PEABODY & ARNOLD
HARBOUR WHARF
BOSTON, MA 02119

APPROVED FOR THE DEPARTMENT BY:
NAME:  Jack Runtal
TITLE:  CONCILIATOR

*Disclosing Social Security Number is voluntary. It will assist in the processing of your agreement.
REPRODUCE AS NEEDED

**EXHIBIT 11**

F*4/5
ADA ------------------------ AGENT ----------------------------
        AIRPORT AGENT - PART ONE                        RLKGES
-----------------------------------------------------------------
   RPORT AGENT* - PART ONE  -  AGENT POSITION

THIS DESCRIPTION HAS BEEN DESIGNED TO INDICATE THE
GENERAL NATURE AND LEVEL OF WORK PERFORMED BY
EMPLOYEES WITHIN THIS CLASSIFICATION.  IT IS NOT
DESIGNED TO CONTAIN OR BE INTERPRETED AS A
COMPREHENSIVE INVENTORY OF ALL DUTIES, RESPONSI-
BILITIES, AND QUALIFICATIONS WHICH MAY BE REQUIRED
OF EMPLOYEES ASSIGNED TO THIS JOB CLASSIFICATION.

JOB DESCRIPTION-----------------------------------

SERVES CUSTOMERS IN A CARING/EFFICIENT/AND DIPLO-
MATIC MANNER.  PROMOTES AND SELLS AIR TRAVEL WITH
AMERICAN AIRLINES, PREPARES ITINERARIES, COMPUTES
FARES, ISSUES REFUNDS, PREPARES AND ISSUES TIC-
KETS, CHECKS BAGGAGE, AND COLLECTS EXCESS BAGGAGE
CHARGES IN ACCORDANCE WITH TARIFF RULES.  ANSWERS
INQUIRIES REGARDING GENERAL TRAVEL INFORMATION.
RESOLVES CUSTOMER PROBLEMS IN A MUTUALLY BENE-
FICIAL MANNER.

MEETS, POSITIONS JETBRIDGES, PASSENGER STANDS OR
MOBILE STAIRS, AND DISPATCHES AIRCRAFT AT GATE OR
LOADING AREA.  COMMUNICATE WITH GROUND CREW AND
FLIGHT CREW TO MEET ARRIVING AIRCRAFT.  PERFORMS
DUTIES IN THE DEPARTURE LOUNGES OR AT BOARDING
GATES WHEN ENPLANING/DEPLANING PASSENGERS, CHECKS
PASSENGER TICKET FOR VALIDITY AND LIFTS APPRO-
PRIATE COUPON.  COMPLETES ALL NECESSARY ARRANGE-
MENTS FOR ACCOMMODATING PASSENGERS HOLDING RESER-
VATIONS,STANDBYS, AND THEIR LUGGAGE.  ASSISTS
ELDERLY PASSENGERS AND THOSE WITH SMALL CHILDREN
OFTEN CARRYING ITEMS SUCH AS CARRY ON LUGGAGE,
BABY STROLLERS, ETC. LIFTS PASSENGERS FROM AN
AISLE CHAIR TO A WHEELCHAIR IN ORDER TO PUSH THEM
UP THE JETBRIDGE OR ACROSS THE RAMP.  MAY HAVE TO
CARRY PASSENGERS QUICKLY DOWN STEPS IF THEY ARE
UNABLE TO WALK.  PUSHES WHEELCHAIR PASSENGERS OF
VARYING WEIGHTS UP/DOWN THE JETBRIDGE. COORDINATES
CABIN AVAILABILITY, MEAL COUNT AND IN-FLIGHT SUP-
PLIES WITH FLIGHT ATTENDANTS.  HANDLES OVERSALES.
DETERMINES FLIGHT CLOSE-OUT TIME AND PREPARES,
COMPLETES AND CHECKS VARIOUS FLIGHT FORMS FOR
ACCURACY.  INVALIDATES TICKETS AND COMPLETES POST-
DEPARTURE PROCEDURES.

LIFTS AND CARRIES BAGS, PET KENNELS, AND BOXES
WEIGHING UP TO 100 LBS UP STAIRS, DOWN STAIRS, AND
TO THE BAGGAGE STORAGE AREAS.  CLEARS UNCLAIMED
BAGS/PRIORITY PARCEL SHIPMENTS FROM INCOMING BAG
BELT. PROCESSES LOST AND FOUND ARTICLES, INITIATES
TRACING PROCEDURE FOR LOST PASSENGER ARTICLES,
KEEPS OWNER INFORMED OF PROGRESS OF SEARCH AND RE-
TURNS ARTICLES FOUND TO CUSTOMER.  PROCESS CLAIMS
FOR DAMAGED OR LOST LUGGAGE AND PERSONAL ARTICLES
   ) MAKES ON-THE-SPOT SETTLEMENT OF MINOR CLAIMS.
PREPARES AND MAINTAINS REQUIRED RECORDS/REPORTS
OF LOST AND FOUND ACTIVITIES. MAY ALSO BE REQUIRED
TO STOCK TICKET COUNTERS, GATE AREAS AND STORAGE
AREAS.  CHANGE STOCK IN AUTOMATED PRINTERS.  PER-
FORM TESTS ON SECURITY CHECKPOINTS WITH FAA AP-

PROVED TEST OBJECTS AND REPORTS/RECORDS RESULTS.
PERFORM AS A GROUND SECURITY COORDINATOR.  PREPARE
WEIGHT AND BALANCE.  ACCOMPLISH CABIN AND/OR RAMP
⌐⌐RVICE QUALITY CONTROL CHECKS.  COMMUNICATE WITH
  ⌐TOMERS OVER THE TELEPHONE WHEN RESEARCHING PAS-
SENGER COMPLAINTS, ADVISING OF CANCELLED OR DE-
LAYED FLIGHTS, ETC. HANDLE CATERING ORDERING,
CARRY SUPPLEMENTAL MEALS TO DEPARTING AIRCRAFT IN
AN EXPEDITIOUS MANNER, AND COMPILE OVER AND SHORT-
AGE REPORTS FOR THE STATION. REPRESENT THE STATION
AT VARIOUS OUT OF TOWN MEETINGS.

JOB REQUIREMENTS----------------------------------

HIGH SCHOOL DIPLOMA OR GED. VALID STATE DRIVERS
LICENSE IS ONLY REQUIRED IN LAS AND SYR LOCATIONS.
ABILITY TO WORK ROTATING SHIFTS AND DAYS
OFF. FLUENCY IN A SPECIFIC FOREIGN LANGUAGE /INTL
DEPT/. PUBLIC CONTACT EXPERIENCE.  MEET HEIGHT,
WEIGHT, AND PROFILE REQUIREMENTS /REFER TO PASSEN-
GER SERVICE MANUAL/.  SATISFACTORY COMPLETION OF
WRITTEN TEST.  ABILITY TO READ, WRITE, FLUENTLY
SPEAK AND UNDERSTAND THE ENGLISH LANGUAGE. ABILITY
TO ACCEPT OWNERSHIP, RESPONSIBILITY, AND ACCOUNT-
ABILITY OF FUNCTIONAL OBLIGATIONS, EXHIBIT
PATIENCE AND DIPLOMACY, AND COMMUNICATE EFFEC-
TIVELY WITH ALL LEVELS OF MANAGEMENT.

ESSENTIAL JOB FUNCTIONS---------------------------

MUST BE ABLE TO PERFORM THE FOLLOWING FUNCTIONS
UNDER/SOMETIMES/STRESSFUL CONDITIONS BEYOND THE
EMPLOYEE/S CONTROL WHILE ATTEMPTING TO INFLUENCE
A FAVORABLE IMPRESSION OF AMERICAN AIRLINES, E.G.
OFF-SCHEDULE OPERATIONS /OSO/ CAUSED BY INCLEMENT
WEATHER OR MECHANICAL MALFUNCTIONS.  EMPLOYEE MAY
ALSO BE SUBJECT TO JET ENGINE FUMES, VEHICLE EMIS-
SIONS, DUST AND JET ENGINE NOISE.
- ABILITY TO HANDLE MULTIPLE TASKS SIMULTANEOUSLY
        /E.G. QUESTIONS FROM FLIGHT DECK CREWS,
        FLIGHT ATTENDANTS, AND CUSTOMERS, LISTEN
        FOR INCOMING CALLS FROM 2 AIRIC RADIOS
        AND A WALKIE-TALKIE, ANSWER BOTH
        INCOMING ICS AND OUTSIDE TELEPHONE
        CALLS, AND CHECK-IN A FLIGHT/ AND
        ADAPT TO CONSTANT CHANGES.
- STAND AT TICKET COUNTER POSITION, LISTENS, COM-
        PREHENDS, ASKS QUESTIONS, AND EVALUATES CUS-
        TOMER NEEDS CONCERNING DESTINATION, RESERVA-
        TIONS, FLIGHT DEPARTURE AND ARRIVALS, SEAT
        ASSIGNMENT AND OTHER RELEVANT TRAVEL INFOR-
        MATION.  RESPONDS VERBALLY TO CUSTOMERS RE-
        LYING UPON MEMORY, BY READING FROM SOURCE
        MATERIAL, OR BY REFERRING TO THE COMPUTER
        /SABRE/.  COMMUNICATES VERBALLY WITH GROUND
        CREW AND FLIGHT CREW TO MEET ARRIVING
        FLIGHTS.  LIFT, BEND, STRETCH, AND TURN TO
        CHANGE DEPARTURE/ARRIVAL SIGNS.  RESOLVES
        CUSTOMER PROBLEMS/OFFERS ALTERNATIVES, IN A
        CARING, RESOURCEFUL, AND DIPLOMATIC MANNER.
  ⌐TANDS AND USES FINGER DEXTERITY TO INPUT BY
        TYPING CUSTOMER DATA INTO COMPUTERIZED
        RESERVATIONS SYSTEM TO PRINT A TICKET AND
        BOARDING PASS.  COMPLETES TRANSACTION BY
        COLLECTING AIR-FARE, PET CHARGES, AND
        OTHER MISCELLANEOUS CHARGES BY CASH, OR

CREDIT CARD.  VISUALLY CHECKS APPROPRIATE
IDENTIFICATION FOR PAYMENT BY PERSONAL
CHECK AND WRITES DATA ON CHECK.
- READS CITY DESTINATION CODE ON TICKET COUPON,
PREPARES BAGGAGE TICKET MANUALLY OR COM-
PUTER GENERATED, BENDS TO PLACE CLAIM
CHECK ON BAG, LIFTS AND TURNS WITH BAG
WEIGHING UP TO 100 LBS, PLACES BAG ON
MOVING BAG-BELT.  CALCULATES AND COLLECTS
IF NECESSARY, EXCESS BAGGAGE CHARGES.
RECONSTRUCTS FARES AND ITINERARIES WHEN
CHANGES ARE REQUESTED BY CUSTOMER OR
NECESSARY DUE TO OPERATIONAL REASONS.
- RECONCILE AUDITORS COUPONS WITH CASH RECEIVED,
PERSONAL CHECKS, AND CREDIT CARD VOUCHERS.
CALCULATES TOTAL REVENUE RECEIVED.
- STANDS AT TICKET LIFT POSITION AT ARRIVAL/
DEPARTURE GATE TO CHECK-IN PASSENGERS
BY READING THE CUSTOMER#S TICKET TO
DETERMINE DESTINATION, FLIGHT NUMBER,
DATE OF DEPARTURE, ETC.  USING FINGER
DEXTERITY, INPUTS CUSTOMER DATA INTO A
COMPUTERIZED RESERVATIONS SYSTEM TO
VERIFY AND READ THE RELEVANT INFORMATION.
SOLICITS CUSTOMER INFORMATION REGARDING
SEAT SELECTION, SPECIAL MEALS, OR SPECIAL
ASSISTANCE REQUIRED. LISTENS, COMPREHENDS,
AND ADVISES CUSTOMER.  PULLS BOARDING
PASS FROM COMPUTERIZED RESERVATIONS SYS-
TEM AFTER EVALUATING SPECIFIC SEAT RE-
QUESTED BY THE CUSTOMER.
- CHECKS OVER-SIZED BAGGAGE AND PARCELS AT THE
DEPARTURE GATE READING CUSTOMERS/
DESTINATION FROM TICKET WHICH INVOLVES
BENDING, LIFTING, AND CARRYING BAGS OR
PARCELS WEIGHING UP TO 100 LBS ONTO A
BAG CONVEYOR OR TO ANOTHER LOCATION FOR
PICK-UP OR LOADING.
- STANDS AT BAGGAGE CLAIM AREA ASSISTING PASSEN-
GERS WITH CLAIMS FOR LOST/DAMAGED LUG-
GAGE.  LIFTS AND BENDS TO REMOVE UN-
CLAIMED BAGS/PRIORITY PARCEL SHIPMENTS
FROM INCOMING BAG BELT.  LIFT, BEND, AND
STACK BAGS WEIGHING UP TO 100 LBS ONTO
BAGGAGE CARTS AND INTO STORAGE RACKS/
SHELVES.
- PROVIDES ANNOUNCEMENT TO PASSENGERS/TALKING IN-
TO A SPEAKER-SYSTEM EXPLAINING BOARDING
PROCEDURES AND OFFERING ASSISTANCE TO
THE DISABLED, AND UNACCOMPANIED MINORS
FOR BOARDING THE AIRCRAFT.  ASSISTS
ELDERLY PASSENGERS AND OTHER PASSENGERS
WITH SMALL CHILDREN UP/DOWN STAIRS
AND JETWAYS OFTEN CARRYING ITEMS
SUCH AS CARRY ON LUGGAGE, BABY STROLLERS, ETC.
MEETS ARRIVING AIRCRAFT BY STANDING TO OPERATE A
MOBILE MECHANICAL JETBRIDGE WITH A LENGTH
OF UP TO 110FT AND WEIGHING APPROXIMATELY
57,000 LBS.  USES DEPTH PERCEPTION AND
PERIPHERAL VISION TO EXTEND AND POSITION
BRIDGE UP TO THE AIRCRAFT/S CABIN DOOR OB-
SERVING ALL STATIONARY AND MOVING VEHICLES
IN THE IMMEDIATE AREA.  OPERATES EQUIPMENT
OUTDOORS IN ALL ELEMENTS OF WEATHER.
MUST CLEAR BRIDGES AND/OR STAIRS OF SNOW
IF NECESSARY.

```
***THIS IS NOT THE END OF THE JOB DESCRIPTION***
***REFER TO AIRPORT AGENT - PART TWO FOR THE ***
***REMAINDER OF THE ESSENTIAL JOB FUNCTIONS ***
***AND STATEMENT OF UNDERSTANDING.          ***
----------------------- END OF TEXT -------------------------
ADA  UPDATED 15SEP00


ADA ----------------------- AGENT ----------------------------
         AIRPORT AGENT - PART TWO                    RLKGGI
--------------------------------------------------------------
AIRPORT AGENT - PART TWO  -  AGENT POSITION

***THIS IS A CONTINUATION OF AIRPORT AGENT
***PART ONE. PART TWO CONTAINS THE REMAINDER OF
***THE ESSENTIAL JOB FUNCTIONS AND THE STATEMENT
***OF UNDERSTANDING.

ESSENTIAL JOB FUNCTIONS CONTINUED----------------

- OPENS AND CLOSES AIRCRAFT CABIN DOORS, WITHOUT
         ASSISTANCE, BY REACHING AND BENDING, WITHIN
         A CONFINED SPACE,TO MOVE THE DOOR FROM ITS
         RESTING POSITION.  STEADIES THE DOOR WITH
         ARMS AND LEGS TO GUIDE IT INTO POSITION,
         PULLS AND TWISTS WITH BOTH HANDS FROM SIDE
         TO SIDE FROM THE WAIST TO POSITION DOOR.
         PUSHES OR PULLS TO OPEN OR CLOSE.  DOOR MAY
         BE ELECTRICALLY ASSISTED OR MANUAL.  LIFTS
         AND POSITIONS BOARDING RAMPS WEIGHING 36
         LBS FOR CERTAIN TYPE AIRCRAFT.
- MUST BE ABLE TO LIFT OR ASSIST IN LIFTING
         INCAPACITATED PASSENGERS WEIGHING UP TO 350
         LBS. FROM/TO A WHEELCHAIR, AIRCRAFT SEAT OR
         AISLE CHAIR.  WHERE NO JETWAY EXISTS, CARRIES
         OR ASSISTS TO CARRY PASSENGER UP/DOWN STAIRS.
         PUSH WHEELCHAIR UP/DOWN JETWAY WITH DEGREE
         SLOPE OF 30 OR MORE.
- STANDS BEHIND PRIORITY PARCEL SERVICE COUNTER
         LISTENS AND DIAGNOSES CUSTOMER QUESTIONS
         AND CONCERNS REGARDING SHIPMENTS.  CALCU-
         LATES THE FARE TO BE CHARGED AND QUERIES
         THE COMPUTER SYSTEM TO LOCATE THE APPRO-
         PRIATE BILLING INFORMATION AND WRITES THE
         FARE AMOUNT ON THE APPROPRIATE PACKING
         SLIP.  LIFTS PARCEL FROM THE FLOOR, SCALE,
         OR A CART AND PLACE SHIPMENT INTO DOMESTIC
         OR INTERNATIONAL BAGS AND PLACES ON OUT-
         BOUND BAG CART.  READS AND COMPLETES INTER-
         NATIONAL MANIFEST FORMS FOR SHIPMENTS TO
         INTERNATIONAL DESTINATIONS.
- ABILITY TO LEARN AND APPLY KNOWLEDGE OF LINE
         CARGO, RAMP SERVICES AND CABIN SERVICES IN
         ORDER TO MAKE OBSERVATIONS FOR MONTHLY
         REPORTS.  IN SMALL CITIES, MAY SERVE AS
         VACATION RELIEF FOR CARGO FUNCTIONS TO IN-
         CLUDE LOADING AND UNLOADING BAGGAGE.
- LIFT, BEND, REACH, STRETCH, AND TURN TO STOCK
         TICKET COUNTER, GATE AREA, AND STORAGE
         AREA.  LIFT, BEND, REACH, AND TURN TO
         CHANGE STOCK OF AUTOMATED PRINTERS.  MAY
         REQUIRE STANDING ON STEP STOOLS OR LAD-
         DERS IN ORDER TO REACH OVER HEAD TO REMOVE
         AND/OR PLACE BOXES AND OTHER ITEMS WEIGHING
         UP TO 40 LBS.
```

    - COGNITIVE SKILLS TO PERFORM BASIC MATHEMATICAL
          SKILLS TO CALCULATE/PRE-PLAN WEIGHT AND
          BALANCE RESTRICTIONS FOR AIRCRAFT.
    - MUST BE ABLE TO WORK ALONE OR WITH MINIMAL
          SUPERVISION.
    - REPORTS TO WORK ON A REGULAR AND TIMELY BASIS.

MOST OF THE ABOVE FUNCTIONS ARE NORMALLY PER-
FORMED WITHIN CERTAIN NARROW TIME CONSTRAINTS
WHICH ARE USUALLY DICTATED BY THE ACTUAL ARRIVAL
OF AN AIRCRAFT AND IT/S SCHEDULED DEPARTURE.
THE FAILURE TO PERFROM THESE FUNCTIONS MAY RESULT
IN POOR CUSTOMER PERCEPTION CAUSING A LOSS OF
REVENUE, E.G. PASSENGER INCONVENIENCE CAUSED BY
LOST BAGGAGE OR DELAYED AIRCRAFT DEPARTURES.    THE
FAILURE TO PERFORM THESE FUNCTIONS PROPERLY MAY
RESULT IN SERIOUS INJURY TO EMPLOYEES, DAMAGED
GROUND EQUIPMENT AND/OR COMPANY AIRCRAFT.

STATEMENT OF UNDERSTANDING-----------------------

I HAVE READ AND UNDERSTAND THE POSITION DESCRIP-
TION AND ESSENTIAL JOB FUNCTIONS PROVIDED TO ME
FOR THE ABOVE POSITION.  BY MY SIGNATURE, I
CONFIRM THAT I/

PLEASE CHECK ONE OF THE FOLLOWING*

-----CAN PERFORM ALL OF THE ESSENTIAL FUNCTIONS OF
          OF THE POSITION.

-----CANNOT PERFORM ALL OF THE ESSENTIAL FUNCTIONS
          OF THE POSITION.


I ALSO UNDERSTAND THIS IS NOT A JOB OFFER NOR IS
IT INTENDED TO BE ANY GUARANTEE OF FUTURE EMPLOY-
MENT OPPORTUNITIES AND/OR RIGHTS.

-----------------------------------    -----------
APPLICANT SIGNATURE                    DATE


-----------------------------------    -----------
COMPANY REPRESENTATIVE SIGNATURE       DATE

*THIS JOB DESCRIPTION IS TO BE USED FOR BOTH
THE AIRPORT AGENT AND THE AFFILIATE AIRPORT AGENT
POSITIONS.

          REVISION 2/28/96

------------------------ END OF TEXT ------------------------
ADA   UPDATED 15SEP00

HDQ.HDQ7EEL 1407 23-MAY-2001 031DF0