UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12095 RGS

* * * * * * * * * * * * * * * * *
)
DOREEN CERRA,                    )
    Plaintiff,               )
)
vs.                              )
)
AMERICAN AIRLINES,               )
    Defendant.               )
)
* * * * * * * * * * * * * * * * *

**DEPOSITION OF DOREEN E. CERRA**, a witness called on behalf of the Defendant pursuant to the Federal Rules of Civil Procedure before Jo Anne M. Shields, Professional Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Fitzhugh, Parker & Alvaro LLP, 155 Federal Street, Boston, Massachusetts, on Tuesday, July 19, 2005, commencing at 10:19 a.m.

**DUNN & GOUDREAU COURT REPORTING SERVICE, INC.**
One State Street
Boston, Massachusetts 02109
Telephone (617) 742-6900

```
 1      APPEARANCES:
 2
 3      JAMES R. TEWHEY, ESQUIRE
            19 North Street
            Salem, Massachusetts   01970-3970
 4          (978) 741-2255
            for the Plaintiff
 5
 6      AMY CASHORE MARIANI, ESQUIRE
            FITZHUGH, PARKER & ALVARO LLP
 7          155 Federal Street, Suite 1700
            Boston, Massachusetts   02110-1727
 8          (617) 695-2330
            for the Defendant
 9
10      DAVID W. STRICKLER, ESQUIRE
            AMERICAN AIRLINES
11          4333 Amon Carter Boulevard
            MD 5675
12          Fort Worth, Texas   76155
            (817) 967-1116
13          for the Defendant
14
15
16
17      ALSO PRESENT:
18         Deborah Sabri, Assistant to Attorney Tewhey
19
20
21
22
23
24
```

```
 1              right?
 2   A.  Correct.
 3   Q.  And she came back onto the line and indicated
 4       that she had learned your medication was the
 5       problem; is that right?
 6   A.  Correct.
 7   Q.  And that you could not be cleared to return to
 8       work because of your medication?
 9   A.  Correct.
10   Q.  Did you discuss anything else with her in that
11       conversation?
12   A.  Yes.
13   Q.  What else did you discuss?
14   A.  That a lot of people are on an antidepressant
15       and perform their job just fine.
16   Q.  And who indicated that during the conversation?
17       Who said that during the conversation?
18   A.  Her or I?
19   Q.  Yes.
20   A.  Me.
21   Q.  Okay.  Did Ms. Vallee indicate to you why your
22       medication was preventing you from being
23       cleared?
24   A.  No.
```

```
 1    A.   Yes.
 2    Q.   And what has Joan said to you?
 3    A.   I don't want to swear.  But, basically, that I
 4         got screwed, she thought.  That's just her
 5         opinion, I guess.
 6    Q.   Okay.  Anything else that you remember besides
 7         her general impression?
 8    A.   That she was one of the people that used to do
 9         the bids and that she didn't understand why
10         some people could work and I couldn't.
11    Q.   When you say she didn't understand why some
12         people could work and you couldn't, what --
13         what was meant by that, if you know?
14    A.   I --
15              MR. TEWHEY:  Objection.  You can answer if
16         you know.
17    A.   I do know.  There was an employee there that
18         had a psychiatric condition that could -- that
19         continued to work there.  And she -- when it
20         was time to bid -- in order -- you -- okay.
21         She wasn't allowed to work down at the gates.
22    Q.   And what was this employee's name?
23    A.   Anna Zani.
24    Q.   For how long had Anna not been allowed to work
```

```
 1           at the gates?
 2   A.      I don't know.
 3   Q.      And how did you become aware of the fact that
 4           Anna allegedly had a psychiatric condition?
 5              MR. TEWHEY:  Objection.  You can answer if
 6           you know.
 7   A.      I worked with her as well.
 8   Q.      What, if anything, do you know about Anna's
 9           medical condition?
10              MR. TEWHEY:  Objection.  You can answer if
11           you know.
12   A.      That she had a -- a bipolar, and she was
13           heavily medicated a lot of the times.  And
14           that's all I know.
15   Q.      Is it fair to say you don't know the nature of
16           the medication that she was on?
17   A.      It's fair to say that I don't know.
18   Q.      And do you know whether -- how did you learn
19           that Anna was not allowed to bid on certain --
20           on the gate position?
21              MR. TEWHEY:  Objection.  You can answer.
22   A.      Because Joan made up the bid.
23   Q.      What was Joan's position?
24   A.      An agent.
```

**ORIGINAL**

Volume: II
Pages: 135-262

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-12095 RGS

DOREEN CERRA,

       Plaintiff

vs.

AMERICAN AIRLINES,

       Defendant

DAY 2 - VOLUME II

CONTINUED DEPOSITION OF:   DOREEN E. CERRA

FITZHUGH, PARKER & ALVARO, LLP

155 Federal Street

Suite 1700

Boston, MA 02110-1727

September 20, 2005

Virginia Dodge
Registered Professional Reporter

DUNN & GOUDREAU

```
APPEARANCES:



Representing the Plaintiff:

    LAW OFFICE OF JAMES R. TEWHEY
    19 North Street
    Salem, MA 01970-3970
    BY:  JAMES R. TEWHEY, ESQ.
    (978) 741-2255



Representing the Defendant:

    FITZHUGH, PARKER & ALVARO, LLP
    155 Federal Street
    Suite 1700
    Boston, MA 02110-1727
    BY:  AMY CASHORE MARIANI, ESQ.
    (617) 695-2330

    and

    AMERICAN AIRLINES
    4333 Amon Carter Boulevard
    MD 5675
    Fort Worth, TX 76155
    BY:  DAVID W. STRICKLER, ESQ.
    (817) 967-1116
```

1  A.    Yeah.  She said something about that.
2  Q.    Does that note refresh your recollection in any way
3  about your conversation with Ms. Vallee?
4  A.    Yes.  I guess so.  Yeah.  There it is.
5  Q.    Is there anything else that you remember as you sit
6  here today about your conversation with Ms. Vallee on
7  September 5, 2001?
8  A.    That she was going to call someone she knew because
9  the mention about the other people being on medicine that
10 were still working there.
11 Q.    What mention of other people on medicine that were
12 still working?
13 A.    Oh, I can't remember who it was, but there were
14 people that were on medicine, and they were still working,
15 and --
16 Q.    Did you discuss the fact that there were people on
17 medicine working --
18 A.    No.
19 Q.    -- with Ms. Vallee?
20 A.    No.  I didn't -- we didn't talk names.  We didn't --
21 but I did say that.
22 Q.    So during the course of your conversation with
23 Ms. Vallee when she informed you that it had to do with
24 your medicine --

1  A.     Yes.
2  Q.     -- did you then tell Ms. Vallee that you were aware
3  of other people on medicine working?
4  A.     No.  Couldn't have been that phone call.  Couldn't
5  have been.  Because she was all upset on the last -- that
6  last phone call, that her husband was going in for
7  surgery, and she would get back to me because she knew
8  someone else in -- Sharon Douglas was on vacation.
9         I don't know.  This is all stuff that's just coming
10 into my -- you know what I mean?
11 Q.     So do you remember having another discussion with
12 her after September 5?
13 A.     I can't remember.  She never called me back.  She
14 said, "Give me a couple of days," and -- I can't remember.
15 I think I gave her a couple of days, and she didn't call
16 me back.  Then 9/11 happened.  Then I probably tried
17 calling her, couldn't get through.  It was just a mess.
18 It was a mess.
19        MR. TEWHEY:  Doreen, I want you to let her
20        finish her question before you start answering.
21 A.     Oh, I'm sorry.
22 Q.     (By Ms. Mariani)  Did you contact Medical on or
23 about September 5, 2001?
24 A.     I don't remember.

```
 1  with my doctor saying that I can -- they say I can't --
 2  then I can appeal.
 3  Q.    And again, your understanding comes from documents
 4  that you reviewed in NavigAAtor; is that correct?
 5  A.    That's right.
 6  Q.    Do you know what the appeal process was?
 7  A.    That -- no, I don't.
 8  Q.    Did you ever seek to appeal, even though you didn't
 9  have a letter?
10  A.    No, I didn't.
11  Q.    You testified earlier that you became aware that
12  there was a problem with your medications on or about
13  September 5, 2001.  When you learned that there was a
14  problem with your medications that would prevent you from
15  returning to work, did that decision upset you?
16          MR. TEWHEY:  Objection.
17  A.    Yeah.
18  Q.    (By Ms. Mariani)  Why did it upset you?
19  A.    Well, because everybody's on medication.  The whole
20  world's on medication.  And they're all working.
21  Q.    So is it fair to say that you would have -- you were
22  upset because other people were permitted to work on
23  medication, while you in your circumstances were not?
24  A.    Right.  If this were the case, that it were the
```